WILLIAM J. FRIMEL (Bar No. 160287)
Seubert Frimel & Warner LLP
1075 Curtis Street
Menlo Park, CA  94025
Tel:  650.322.3048
Fax:  650.833.2976
bill@sffwlaw.com

Attorneys for Defendant
CAPITAL ASSET EXCHANGE & TRADING LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

EPICREW USA,

              Plaintiff,

v.

CAPITAL ASSET EXCHANGE &
TRADING LLC, a California limited
liability company,

              Defendant.

Case No. 5:24-cv-03676-EJD

**DEFENDANT CAPITAL ASSET
EXCHANGE & TRADING LLC'S NOTICE
OF MOTION AND MOTION TO DISMISS
PLAINTIFF EPICREW USA'S
COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

Hearing Date:  October 3, 2024
Hearing Time:  9:00 am
Courtroom:  4
Judge:  Hon. Edward J. Davila

1    **NOTICE OF MOTION**

2    PLEASE TAKE NOTICE that, on October 3, 2024, at 9:00 am, or as soon thereafter as

3    counsel may be heard, in the United States District Court for the Northern District of California,

4    located at Courtroom 4, 5th Floor, 280 South 1st Street, San Jose, California 95113, Defendant

5    Capital Asset Exchange & Trading LLC ("CAET") will and hereby does move to dismiss the

6    complaint filed by Plaintiff Epicrew USA ("Epicrew"), and all causes of action therein, pursuant

7    to Fed. R. Civ. P. 12(b)(6), on the ground that the complaint and all causes of action therein fail to

8    state a claim upon which relief may be granted.  This motion shall be based on this Notice, the

9    attached Memorandum of Points and Authorities, the concurrently filed Declaration of William J.

10   Frimel, and such other and further material as may be submitted to the Court on or before the date

11   of the hearing in this matter.

12   **MOTION TO DISMISS**

13   CAET moves to dismiss Epicrew's complaint, and all causes of action therein, pursuant to

14   Fed. R. Civ. P. 12(b)(6), on the ground that the complaint and all causes of action therein fail to

15   state a claim upon which relief may be granted.

16   **ISSUES TO BE DECIDED**

17   The issue to be decided is whether the causes of action set forth in Epicrew's complaint

18   state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

19

20   Dated:  July 17, 2024                              /s/ William J. Frimel

21                                                      WILLIAM J. FRIMEL

22                                                      Attorneys for Defendant
                                                       CAPITAL ASSET EXCHANGE & TRADING

23                                                      LLC

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........................................................................ 1

ALLEGATIONS OF THE COMPLAINT ........................................ 3

ARGUMENT .............................................................................. 4

I.   EPICREW'S FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT SHOULD BE DISMISSED ............................ 4

   A.   Epicrew Fails to Allege a Provision of the Invoice Orders Requiring Delivery "in a Timely Manner," or Define What that Means Under the Invoice Orders ............................ 5

   B.   Epicrew Fails to Allege a Breach of Section 5 of the Invoice Orders ... 5

   C.   Epicrew Fails to Allege a Breach of the Implied Covenant of Good Faith and Fair Dealing ............................ 6

II.   EPICREW'S SECOND CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT SHOULD BE DISMISSED .................... 7

III.   EPICREW'S THIRD AND FIFTH CAUSES OF ACTION FOR FRAUD AND INTENTIONAL MISREPRESENTATION SHOULD BE DISMISSED ............................ 7

   A.   Epicrew Fails to Plead Fraud with Particularity ............................ 7

     1.   Epicrew fails to identify any statement conveying that CAET owned the Equipment ............................ 8

     2.   Epicrew's "general allegations" do not contain any statement to the effect that CAET owned the Equipment ............................ 8

       a.   The Centura system ............................ 8

       b.   The Epsilon system ............................ 9

   B.   The Terms of the Invoice Orders Preclude Epicrew's Claims ............. 10

   C.   The Terms of the Invoice Orders Preclude Epicrew's Claims ............. 11

IV.   EPICREW'S FOURTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION SHOULD BE DISMISSED .................... 12

V.   EPICREW'S SIXTH CAUSE OF ACTION FOR "CONCEALMENT" SHOULD BE DISMISSED ............................ 14

   A.   Epicrew Fails to Plead Fraudulent Concealment with Particularity ...... 14

     1.   Epicrew fails to allege an act of concealment or suppression ........ 14

     2.   Epicrew fails to specify who from CAET engaged in the purported ... 15

fraudulent concealment

   B.  The Terms of the Invoice Orders Preclude Epicrew's Claim ....................... 16

   C.  The Economic Loss Rule Bars Epicrew's Claim .................................... 16

VI.  EPICREW'S SEVENTH CAUSE OF ACTION FOR "FALSE PROMISE"
     SHOULD BE DISMISSED ..................................................................... 16

   A.  Epicrew Fails to Plead Fraud with Particularity ................................... 17

   B.  The Economic Loss Rule Precludes Epicrew's Promissory Fraud Claim ...... 17

VII. EPICREW'S EIGHTH CAUSE OF ACTION UNDER CAL. BUS. &
     PROF. CODE § 17200 SHOULD BE DISMISSED ...................................... 18

   A.  CAET's Alleged Refusal to Refund Epicrew's Payments ....................... 18

      1.  The "fraudulent" prong ........................................................... 18

      2.  The "unlawful" prong ............................................................. 19

      3.  The "unfair" prong ................................................................. 19

   B.  CAET's Alleged, False Claim to Own the Equipment ............................ 20

VIII. EPICREW'S NINTH CAUSE OF ACTION FOR "DECLARATORY
      RELIEF" SHOULD BE DISMISSED ..................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

*In re Anthem, Inc. Data Breach Litig.,* 162 F. Supp. 3d 953 (N.D. Cal. 2016) ......... 5

*Asghari v. Volkswagen Grp. of Am., Inc.,* 42 F. Supp. 3d 1306 (C.D. Cal. 2013) ...... 14

*Ashcroft v. Iqbal,* 556 U.S 662 (2009) ....................................................... 4

*Avila v. Wells Fargo Bank,* No. C 12-01237, 2012 WL 4097744 (N.D. Cal. Sept.
17, 2012) .............................................................................................. 20

*Baymiller v. Guarantee Mut. Life Co.,* No. SA CV99-1566, 2000 WL 33774562
(C.D. Cal. Aug. 3, 2000) ................................................................... 2, 11

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) .......................................... 4

*Bly-Magee v. Cal.,* 236 F.3d 1014 (9th Cir. 2001) ......................................... 8

*Body Jewelz Inc. v. Valley Forge Ins. Co.,* 241 F. Supp. 3d 1084 (C.D. Cal. 2017) ... 11

*Boris v. Wal-Mart Stores, Inc.,* 35 F. Supp. 3d 1163 (C.D. Cal. 2014) ............ 19, 20

*Burch v. CertainTeed Corp.,* 34 Cal. App. 5th 341 (2019) ............................... 14

*Cooper v. Pickett,* 137 F.3d 616 (9th Cir. 1997) ........................................... 8

-ii-

| | |
|---|---|
| *Durell v. Sharp Healthcare,* 183 Cal. App. 4th 1350 (2010) | 19 |
| *DXC Tech. Co. v. Gen Digital, Inc.*, No. 23-cv-04818, 2024 WL 2882565 (N.D. Cal. Jun. 7, 2024) | 3, 4, 21 |
| *Eidmann v. Walgreen Co.,* 522 F. Supp. 3d 634 (N.D. Cal. 2021) | 18 |
| *Epitech, Inc. v. Cooper Indus., PLC,* No. 11-cv-1693, 2011 WL 5118767 (S.D. Cal. Oct. 28, 2011) | 17 |
| *Finch Aerospace Corp. v. City of San Diego,* 8 Cal. App. 5th 1248 (2017) | 14 |
| *Foster Poultry Farms v. Alkar-Rapidpak-MP Eqpmt., Inc.,* 868 F. Supp. 2d 992 (E.D. Cal. 2012) | 12 |
| *Garcia v. Sony Computer Ent'mt. Am., LLC,* 859 F. Supp. 2d 1056 (N.D. Cal. 2012) | 18, 20 |
| *Gavaldon v. StanChart Secs. Int'l., Inc.,* No.: 16cv590-LAB, 2019 WL 764031 (S.D. Cal. Feb. 20, 2019) | 9 |
| *Greenpeace, Inc. v. Walmart Inc.,* No. 21-cv-00754, 2021 WL 4267536 (N.D. Cal. Sept. 20, 2021) | 20 |
| *Hadley v. Kellogg Sales Co.,* 243 F. Supp. 3d 1074 (N.D. Cal. 2017) | 6 |
| *Immobiliare, LLC v. Westcor Land Title Ins. Co.,* 424 F. Supp. 3d 882 (E.D. Cal. 2019) | 14, 16 |
| *In re iPhone App. Litig.,* 6 F. Supp. 3d 1004 (N.D. Cal. 2013) | 21 |
| *Jacobson v. Schwarzenegger,* 357 F. Supp. 2d 1198 (C.D. Cal. 2004) | 13 |
| *JMP Secs. LLP v. Altair Nanotechnologies, Inc.*, 880 F. Supp. 2d 1029 (N.D. Cal. 2012) | 2, 11, 18 |
| *Kassa v. BP West Coast Prods., LLC,* No. C-08-02725, 2008 WL 3494677 (N.D. Cal. Aug. 12, 2008) | 7 |
| *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) | 1, 10 |
| *Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) | 6 |
| *Kroetch v. BAC Home Loan Servs.,* No. C 11–2860, 2011 WL 4502350 (N.D. Cal. Sept. 27, 2011) | 6 |
| *LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.,* No. 18-cv-02573, 2019 WL 160335 (N.D. Cal. Jan. 10, 2019) | 19 |
| *Lingad v. Indymac Fed. Bank,* 682 F. Supp. 2d 1142 (E.D. Cal. 2010)) | 6, 7 |
| *Lokey v. CVS Pharm., Inc.,* No. 20-cv-04782, 2020 WL 6822890 (N.D. Cal. Nov. 20, 2020) | 19 |
| *Mangindin v. Wash. Mut. Bank,* 637 F. Supp. 2d 700 (N.D. Cal. 2009) | 21 |

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. CV 07-CV-912, 2007 WL 2206946 (S.D. Cal. July 27, 2007). — 17

*Mosqueda v. Am. Honda Motor Co.,* 443 F. Supp. 3d 1115 (C.D. Cal. 2020) — 16

*N. Am. Co. for Life & Health Ins. v. Zhang,* No. CV 18-01872, 2019 WL 1060616 (C.D. Cal. Jan. 3, 2019) — 17

*Neilson v. Union Bank of Cal., N.A.,* 290 F. Supp. 2d 1101 (C.D. Cal. 2003) — 12

*Oracle USA, Inc. v. XL Global Servs., Inc.,* No. C 09-00537, 2009 WL 2084154 (N.D. Cal. Jul. 13, 2009) — 11-12

*Ovitz v. Chartis Prop. Cas. Co.,* No. CV 15-3916, 2015 WL 12746209 (C.D. Cal. Sept. 14, 2015) — 17

*In re Outlaw Lab., LLP,* 463 F. Supp. 3d 1068 (S.D. Cal. 2020) — 18, 19

*Pasadena Live, LLC v. City of Pasadena,* 114 Cal. App. 4th 1089 (2004) — 6

*Pension Tr. Fund for Operating Eng'rs. v. Fed. Ins. Co.,* 307 F.3d 944 (9th Cir. 2002) — 7

*Reveal Chat Holdco, LLC v. Facebook, Inc.,* 471 F. Supp. 3d 981 (N.D. Cal. 2020) — 15

*Robinson Helicopter Co. v. Dana Corp.,* 34 Cal. 4th 979 (2004) — 11

*Rosenfeld v. JPMorgan Chase Bank, N.A.,* 732 F. Supp. 2d 952 (N.D. Cal. 2010) — 7

*Ryan v. Microsoft Corp.,* 147 F. Supp. 3d 868 (N.D. Cal. 2015) — 15

*Sears v. Kroger Co.*, No. 2:17-cv-04394, 2018 WL 4398875 (S.D. W.Va. May 23, 2018) — 5

*In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970 (9th Cir. 1999) — 6

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.,* 983 F. Supp. 1303 (N.D. Cal. 1997) — 13

*UMG Recordings, Inc. v. Global Eagle Ent'mt., Inc.*, 117 F. Supp. 3d 1092 (C.D. Cal. 2015) — 17

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.,* 660 F. Supp. 2d 1163 (C.D. Cal. 2009) — 12

*U.S. Concord, Inc. v. Harris Graphics Corp.,* 757 F. Supp. 1053 (N.D. Cal. 1991) — 12

*Veasna Chan Hun v. Hajjar,* No. CV 18-10330, 2019 WL 8221087 (C.D. Cal. Sept. 3, 2019) — 13

*Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097 (9th Cir. 2003) — 8

*Ward v. Pickett*, No. C-13-01735, 2013 WL 5496549 (N.D. Cal. Oct. 3, 2013) — 9, 10

*Whirlpool Corp. v. Grigoleit Co.*, No. 1:06-CV-195, 2007 WL 397030 (W.D. Mich. Feb. 1, 2007) — 5

*Wiskind v. JPMorgan Chase Bank, N.A.,* No. 14-cv-04223, 2015 WL 400549    9, 10, 16
(N.D. Cal. Jan. 29, 2015)

*Woods v. Google, Inc.,* 889 F. Supp. 2d 1182 (N.D. Cal. 2012)    10

*Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110 (N.D. Cal. 2011)    2, 5

MEM. OF PS. & AS. IN SUPP. OF DEF.'S MOT. TO DISMISS

1

## INTRODUCTION

2        The principal basis for Plaintiff Epicrew USA's ("Epicrew") complaint is that, allegedly,

3  Defendant Capital Asset Exchange & Trading LLC ("CAET") told Epicrew that CAET owned

4  certain semiconductor equipment that Epicrew agreed to purchase from CAET (the

5  "Equipment"), when in fact CAET did not own the Equipment, and Epicrew would not have

6  entered into its contracts with CAET had it known that fact.  However, this claim is contrary to

7  language in the contracts that the complaint itself acknowledges.  Both contracts, which were

8  called "Invoice Orders," stated that "[a]ll Equipment is offered to Buyer," *i.e.*, Epicrew, "based

9  on its prior sale to CAET.  Should such prior sale not occur, this invoice shall be null and void."

10 (Decl. of William J. Frimel in Supp. of Mot. to Dismiss, Jul. 17, 2024 ("Frimel Decl."), Exh. A, ¶

11 5; *id.* Exh. B, ¶ 5.)  The orders also required Epicrew to agree "not to circumvent CAET by

12 purchasing [the] Equipment directly from CAET's supplier."  (*Id.* Exh. A, ¶ 4; *id.* Exh. B, ¶ 4.)

13 In other words, the Invoice Orders acknowledged the possibility that CAET might *not* yet own

14 the Equipment, as CAET's supplier might not yet have sold it to CAET.  The reason for this, as

15 communications between the parties that Epicrew also cites reflect, is that CAET functions as an

16 intermediary between buyers and sellers of semiconductor equipment.  Regardless, Epicrew fails

17 to identify any alleged statement by CAET to the effect that CAET owned the Equipment.  Thus,

18 Epicrew's complaint fails to state a claim, and must be dismissed under Fed. R. Civ. P. 12(b)(6).

19       *First*, Epicrew alleges numerous causes of action that sound in fraud, including fraud,

20 negligent misrepresentation, intentional misrepresentation, "concealment" and "false promise."

21 The first four such claims (*i.e.*, Epicrew's Third, Fourth, Fifth and Sixth Causes of Action) are

22 based on CAET's purported representation that it owned the Equipment, which supposedly

23 induced Epicrew to enter into the Invoice Orders.  As discussed, however, the complaint fails to

24 identify any statement by CAET indicating that it owned the Equipment, or who at CAET made

25 that statement, and thus does not plead fraud with particularity as required by Fed. R. Civ. P. 9(b).

26 *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (complaint "failed to plead . .

27 . fraud with particularity" because "[n]owhere . . . does [plaintiff] specify what [defendant's]

28 television advertisements or other sales material specifically stated").  Further, the Invoice Orders

expressly acknowledged that CAET might not own the Equipment at the time Epicrew executed the orders, and thus Epicrew could not have reasonably relied on any statement by CAET to the effect that it owned the Equipment in any event. *See Baymiller v. Guarantee Mut. Life Co.*, No. SA CV99-1566, 2000 WL 33774562, *4 (C.D. Cal. Aug. 3, 2000) (dismissing fraud claim because "there cannot be reasonable reliance upon misrepresentations . . . that are contradicted by the express language of the insurance contracts"). In addition, as Epicrew's fraud claims seek the same relief as its breach of contract claims — *i.e.*, the return of Epicrew's payment for the Equipment — and are based on CAET's alleged breach of its contractual obligation to deliver the Equipment, Epicrew's fraud claims are barred by the economic loss rule. *See JMP Secs. LLP v. Altair Nanotechnologies, Inc.*, 880 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012) (as plaintiff's "fraud and negligent misrepresentation . . . . claims consist of nothing more than [defendant's] alleged failure to make good on its contractual promises," "both claims are barred by California's economic loss rule").

Likewise, Epicrew's Seventh Cause of Action for "false promise," or promissory fraud, merely reiterates Epicrew's breach of contract claim — *i.e.*, that CAET failed to deliver the Equipment as promised — and is hence barred by the economic loss rule as well. This claim must also be dismissed because Epicrew does not allege, with particularity, any facts indicating that CAET never intended to provide the Equipment to Epicrew.

*Second*, Epicrew asserts claims for breach of contract and of the implied covenant of good faith and fair dealing (its First and Second Causes of Action). According to the complaint, CAET breached the Invoice Orders by failing to deliver the Equipment "in a timely manner." However, Epicrew identifies no provision of the Invoice Orders requiring delivery "in a timely manner," or defining what constitutes timely delivery under those agreements. Thus, Epicrew does not state a claim for breach of contract. *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) ("In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached."). Epicrew's implied covenant cause of action simply incorporates by reference Epicrew's allegations elsewhere in the complaint, which fail to state a cognizable claim.

*Third*, Epicrew alleges claims under Cal. Bus. & Prof. Code § 17200 and for declaratory relief (its Eighth and Ninth Causes of Action).  Epicrew's Section 17200 claim relies on (1) CAET's supposed representation that it owned the Equipment, which is inadequately pleaded for the reasons discussed; and (2) CAET's alleged refusal to give Epicrew a refund, which is precluded by, *inter alia*, the Invoice Orders' statement that "[t]his sale is final, and no refund shall be issued to Buyer."  (Frimel Decl. Exh. A, ¶ 23; *id.* Exh. B, ¶ 23.)  Epicrew's declaratory relief claim merely reiterates the allegations of its other causes of action, and therefore must be dismissed.  *See DXC Tech. Co. v. Gen Digital, Inc.*, No. 23-cv-04818, 2024 WL 2882565, *7 (N.D. Cal. Jun. 7, 2024) (dismissing declaratory relief claim because it "amounts to a backward-looking breach of contract claim").

## ALLEGATIONS OF THE COMPLAINT

Epicrew alleges it is based "in Ohmura City, Nagasaki, Japan," and "is an established and well-known corporation specializing in semiconductor refurbishment services."  (Compl., Dkt. No. 1, ¶ 2.)  On May 22, 2023, Epicrew "sent a request to CAE," *i.e.*, CAET, "for an image of" a "Centura EPI 8 System," which is equipment related to semiconductor manufacturing, "and its serial number, to which CAE promptly responded stating that it was unable to complete the request at that time because the system was still in operation."  (*Id.* ¶¶ 1, 11.)  The following day, CAET's David Sardi "sent an invoice for the Centura stating the price as $950,000, plus an estimated price of $15,000 for Settlement Services, bringing the total purchase price to $965,000."  (*Id.* ¶ 12.)  On the same day, Epicrew received another "email from CAE stating, in relevant part," that "[t]his equipment will be released soon, but it usually takes 3-4 weeks for the supplier to arrange removal.  If Epicrew signs before the other offer, our bid of $950K will be accepted.  If our second signs, the first buyer will receive the equipment."  (*Id.* ¶ 13.)

On May 24, 2023, Epicrew signed the Invoice Order for the Centura system.  (*Id.* ¶ 14.)  The Invoice Order stated, among other things, that "Buyer," *i.e.*, Epicrew, "agrees not to circumvent CAET by purchasing Equipment directly from CAET's supplier" (Frimel Decl. Exh. A, ¶ 4); "[a]ll Equipment is offered to Buyer based on its prior sale to CAET," and "[s]hould such prior sale not occur, this invoice shall be null and void" (*id.* Exh. A, ¶ 5); "[t]his Agreement sets

1  forth the entire agreement and understanding of the parties and supersedes all prior agreements

2  and understandings related to its subject matter" (*id.* Exh. A, ¶ 11); and "[t]his sale is final, and no

3  refund shall be issued to Buyer" (*id.* Exh. A, ¶ 23).  The order further provided that "[t]his

4  Agreement is governed by the laws of the State of California."  (*Id.* Exh. A, ¶ 12.)  The day after

5  signing the Invoice Order, Epicrew made an "advance remittance of $950,000 for the Centura and

6  $15,000 for the Settlement Services" to CAET.  (Compl. ¶ 15.)  Epicrew alleges that, due to

7  delays in the delivery of the Centura system, Epicrew asked for a refund.  (*Id.* ¶ 17.)  "CAE

8  responded acknowledging the release delay, but stating that it would not allow EPICREW to

9  cancel the transaction, nor would it refund any of the advance payment."  (*Id.* ¶ 18.)

10  On November 30, 2023, Sardi "sent an invoice to EPICREW offering to sell the Epsilon

11  system," another set of semiconductor manufacturing equipment, "for a total purchase price of

12  $125,000."  (*Id.* ¶ 22.)  Epicrew executed that Invoice Order on November 30, 2023.  (Frimel

13  Decl. Exh. B, at 2.)  The Epsilon Invoice Order contained terms substantially identical to those of

14  the order relating to the Centura system, including the provisions quoted above.  (*See id.* Exh. B,

15  ¶¶ 4, 5, 11, 12, 23.)  On December 6, "EPICREW . . . remitted the advance payment of

16  $125,000."  (*Id.*)  As with the Centura system, Epicrew alleges that, due to delays in the delivery

17  of the equipment, Epicrew requested a refund, but CAET refused.  (Compl. ¶¶ 32, 33.)

18  **ARGUMENT**

19  In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "[t]he court must

20  generally accept as true all 'well-pleaded factual allegations.'"  *DXC Tech. Co.*, 2024 WL

21  2882565, *3 (quoting *Ashcroft v. Iqbal*, 556 U.S 662, 664 (2009)).  However, "courts are not

22  bound to accept as true a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678,

23  and the complaint must plead "enough facts to state a claim for relief that is plausible on its face,"

24  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

25  **I.    EPICREW'S FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT SHOULD BE DISMISSED**

26  To adequately plead a breach of contract, Epicrew must "identify a specific contractual

27  provision that" CAET "breached."  *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953,

28

-4-

979 (N.D. Cal. 2016); *see also Young*, 790 F. Supp. 2d at 1117 ("In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached.").  Epicrew alleges three purported breaches of the Invoice Orders, but the Invoice Orders' terms do not support any of Epicrew's theories.

> **A.** **Epicrew Fails to Allege a Provision of the Invoice Orders Requiring Delivery "in a Timely Manner," or Define What that Means Under the Invoice Orders**

Epicrew alleges that CAET "fail[ed] to deliver" the Equipment "in a timely manner." (Compl. ¶¶ 37(a), 44(a).)  But Epicrew does not cite any provision of the Invoice Orders requiring "timely" delivery or indicating what that term means in the context of the agreements, or explain why CAET's delivery of the Equipment was not timely under that definition.  Epicrew further refers to Cal. Com. Code § 2301 (*id.* ¶ 36), but that provision merely states that "[t]he obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay *in accordance with the contract*."  Cal. Com. Code § 2301 (emphasis added).  As Epicrew does not identify any provision relating to timely delivery that CAET purportedly breached, Epicrew fails to explain how CAET did not act "in accordance with" the Invoice Orders.  *See Whirlpool Corp. v. Grigoleit Co.*, No. 1:06-CV-195, 2007 WL 397030, *5 (W.D. Mich. Feb. 1, 2007) (Uniform Commercial Code ("UCC") "Section 2301 provides '[t]he obligation of the seller is to transfer and deliver . . . in accordance with the contract,'" but "Plaintiff has not alleged Defendant violated any section of the agreement when it terminated its purchase orders," and thus "the claim" for violation of Section 2301 "shall fail"); *see also Sears v. Kroger Co.,* No. 2:17-cv-04394, 2018 WL 4398875, *6 (S.D. W.Va. May 23, 2018) (dismissing claim for violation of UCC Section 2301 because that section provides that "[t]he obligation of the seller is to transfer and deliver . . . in accordance with the contract," but "plaintiff has not alleged, nor can he demonstrate, that a contract was formed between himself and [defendants] . . . to sell plaintiff PSE products").

> **B.** **Epicrew Fails to Allege a Breach of Section 5 of the Invoice Orders**

Epicrew next claims CAET breached "CAE's standard agreement Provision 5" by "purporting to own the" Equipment "which it did not in fact own . . . ."  (Compl. ¶¶ 37(b), 44(b).) "[C]ourts are permitted to 'take into account documents whose contents are alleged in a

complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading,'" such as the Invoice Orders.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)); *see also Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1087 (N.D. Cal. 2017) (same).  Section 5 of the Invoice Orders provides that "[a]ll Equipment is offered to Buyer based on its prior sale to CAET.  Should such prior sale not occur, this invoice shall be null and void."  (Frimel Decl. Exh. A, ¶ 5; *id.* Exh. B, ¶ 5.)  This provision says nothing that could be construed to prohibit CAET from "purporting to own equipment which it did not in fact own."  In fact, this language makes clear that CAET did *not* necessarily own the Equipment, as it contemplates the possibility that CAET's supplier would *not* make a "prior sale to CAET" of the Equipment.  Moreover, the complaint does not identify any statement by CAET to the effect that it owned the Equipment, and thus Epicrew would fail to allege a breach even if a provision prohibiting such statements existed.  (*See* § III.A *infra*.)

**C.     Epicrew Fails to Allege a Breach of the Implied Covenant of Good Faith and Fair Dealing**

Finally, Epicrew claims CAET breached the Invoice Orders by "violating the implied covenants of good faith and fair dealing."  (Compl. ¶¶ 37(c), 44(c).)  The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena,* 114 Cal. App. 4th 1089, 1093-94 (2004).  "Thus, to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated."  *Kroetch v. BAC Home Loan Servs.*, No. C 11–2860, 2011 WL 4502350, *3 (N.D. Cal. Sept. 27, 2011) (citing *Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1154 (E.D. Cal. 2010)).  Epicrew's Second Cause of Action for breach of the implied covenant asserts that CAET "was unfaithful to the purpose of the" Invoice Orders (Compl. ¶ 52), but neither that cause of action nor any other part of the complaint identifies any provision of the Invoice Orders the performance of which was "frustrated."  Thus, this theory does not state a claim either.  *See Kroetch*, 2011 WL 4502350, *3

-6-

(dismissing implied covenant claim because plaintiff had not "identified a specific contractual provision that was frustrated in support of his claim for breach of the implied covenant"); *Lingad*, 682 F. Supp. 2d at 1154 (dismissing implied covenant claim because plaintiff had not "identified any express provision which has been frustrated by [defendant's] conduct").

## II.    EPICREW'S SECOND CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT SHOULD BE DISMISSED

As discussed (*see* § I.C *supra*), this cause of action fails to articulate which provision of the Invoice Orders CAET "frustrated" through its conduct, and must thus be dismissed.  Further, to the extent Epicrew means to allege a *tortious* breach of the implied covenant, this claim must also be dismissed because "California does not recognize tortious breach of the implied covenant of good faith outside of the insurance context."  *Kassa v. BP West Coast Prods., LLC*, No. C-08-02725, 2008 WL 3494677, *6 (N.D. Cal. Aug. 12, 2008).  Even assuming the tort is available outside the insurance context, "[g]enerally, no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics,'" and it "is not available to parties of an ordinary commercial transaction where the parties deal at arms' length."  *Pension Tr. Fund for Operating Eng'rs. v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (internal citations omitted).  Epicrew makes no allegations suggesting it and CAET were in a "special relationship" with "fiduciary characteristics," as the complaint says nothing about *any* relationship between Epicrew and CAET prior to Epicrew's "request to CAE for an image of the Centura equipment."  (Compl. ¶ 11.)  *See Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 969 (N.D. Cal. 2010) (plaintiff failed to state claim for breach of implied covenant because "Plaintiff's Complaint does not allege facts establishing a 'special relationship' between Plaintiff and Defendants").

## III.   EPICREW'S THIRD AND FIFTH CAUSES OF ACTION FOR FRAUD AND INTENTIONAL MISREPRESENTATION SHOULD BE DISMISSED

### A.  Epicrew Fails to Plead Fraud with Particularity

Fed. R. Civ. P. 9(b) "demands that, when averments of fraud are made, the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done

-7-

anything wrong.'"  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

### 1. Epicrew fails to identify any statement conveying that CAET owned the Equipment

Epicrew's Third and Fifth Causes of Action for, respectively, fraud and intentional misrepresentation claim that, to induce Epicrew to purchase the Equipment, CAET falsely stated that it owned the Equipment.  (Compl. ¶ 63 ("CAE's actions are inaction [sic] throughout both transactions show a clear intent to defraud EPICREW by purporting to sell systems and equipment that it did not own at the time it accepted advance payment."); *id.* ¶ 76 ("CAE represented to EPICREW that it owned the Centura and Epsilon systems at the time of sale to EPICREW by way of entering into the Agreements.").)  But Epicrew fails to identify any alleged statement by CAET to the effect that CAET owned the Equipment — much less which person from CAET made that statement and when.  In fact, as noted, Section 5 of both Invoice Orders acknowledged the possibility that the "prior sale" of the Equipment to CAET by a third party might not occur.  (Frimel Decl. Exh. A, ¶ 5; *id.* Exh. B, ¶ 5.)  Similarly, Section 4 provided that "Buyer agrees not to circumvent CAET by purchasing Equipment directly from CAET's supplier" — *i.e.*, before the supplier's sale of the Equipment to CAET was complete, Epicrew would not try to buy it directly from the supplier.  (*Id.* Exh. A, ¶ 4; *id.* Exh. B, ¶ 4.)  The complaint further suggests that CAET operates as an intermediary between buyers and sellers, in alleging CAET "accepts advance payment for the systems and equipment" it sells, "then attempts to find said system [sic] on the market for less than the remittance price."  (Compl. ¶ 59.)

### 2. Epicrew's "general allegations" do not contain any statement to the effect that CAET owned the Equipment

To the extent Epicrew intends to rely on the alleged statements by CAET quoted in the "Background" section of the complaint, those statements are of no help to Epicrew.

#### a.  The Centura system

Regarding the Centura system, the purported statements by CAET on or before May 24,

2023 — the date on which Epicrew says it signed the first Invoice Order (Compl. ¶ 14) — made

no claim that CAET owned the Equipment.  Epicrew alleges that, on May 22, 2023, CAET told

Epicrew it could not provide "an image of the Centura equipment and its serial number . . .

because the system was still in operation."  (*Id.* ¶ 11.)  If anything, this suggested CAET did *not*

yet own the Equipment, as the statement that the Centura "system was still in operation" indicated

that the system was still in use by a third party.  Similarly, Epicrew quotes "an email from CAE"

dated "May 23, 2023" saying "[t]his equipment will be released soon, but it usually takes 3-4

weeks for the supplier to arrange removal.  If Epicrew signs before the other offer, our bid of

$950K will be accepted."  (*Id.* ¶ 13.)  Again, CAET's email's references to the "equipment" being

"released soon" by "*the supplier*," and "*our* bid of $950K" being "accepted," indicated that the

Centura system was owned by a third-party "supplier," and not by CAET.  Epicrew also cites the

Invoice Order for the Centura system (*id.* ¶ 12), but identifies no supposedly fraudulent

statements in it either.  Moreover, apart from alleging CAET's Sardi sent the Invoice Order,

Epicrew fails to specify who from CAET made the above statements.  *See Wiskind v. JPMorgan*

*Chase Bank, N.A.,* No. 14-cv-04223, 2015 WL 400549, *3 (N.D. Cal. Jan. 29, 2015) (fraud claim

dismissed because, "[t]o the extent he alleges that [defendant] misled him, [plaintiff] must

provide more context, such as who communicated the fraudulent statement (*e.g.*, a banker, a

customer service representative)"); *Ward v. Pickett*, No. C-13-01735, 2013 WL 5496549, *5

(N.D. Cal. Oct. 3, 2013) (same).

CAET's remaining, alleged statements regarding the Centura system (Compl. ¶¶ 14-21)

did not claim CAET owned the Equipment either, but in any event, as they occurred *after* the

parties entered the contract, they could not have fraudulently induced Epicrew to purchase the

Equipment.  *See, e.g., Gavaldon v. StanChart Secs. Int'l., Inc.*, No.: 16cv590-LAB, 2019 WL

764031, *2 (S.D. Cal. Feb. 20, 2019) (because "[s]ome statements were made after Plaintiffs had

already taken action, making it impossible for those representations to have influenced their

earlier decisions," they could not be actionable fraud).

**b.  The Epsilon system**

Regarding the Epsilon system, Epicrew signed the Invoice Order governing that

-9-

1    equipment on November 30, 2023 (Frimel Decl. Exh. B, at 2), and alleges it paid for the system

2    on December 6, 2023 (Compl. ¶ 24).  Again, apart from Sardi's email transmitting the Invoice

3    Order (*id.* ¶ 22), the only statements by CAET on or before December 6, 2023 cited in the

4    complaint are two emails in which CAET, respectively, stated that "the Epsilon equipment would

5    be shipped from Singapore," and CAET had received "the advance payment" (*id.* ¶ 24).  Again,

6    in neither statement did CAET purport to own the Epsilon system, and CAET's statements after

7    December 6 (*id.* ¶¶ 25-31) could not have induced Epicrew to make the purchase.  Finally, as

8    with the allegations concerning the Centura system, the complaint fails to specify who made the

9    above statements.  *See Wiskind*, 2015 WL 400549, *3; *Ward*, 2013 WL 5496549, *5.

10       As the complaint fails to identify any fraudulent statements by CAET, the Third and Fifth

11   Causes of Action must be dismissed.  *See Kearns*, 567 F.3d at 1126 (complaint "failed to plead . .

12   . fraud with particularity" because "[n]owhere . . . does [plaintiff] specify what [defendant's]

13   television advertisements or other sales material specifically stated").

14       **B.  The Terms of the Invoice Orders Preclude Epicrew's Claims**

15       As discussed, both Invoice Orders stated that "[a]ll Equipment is offered to Buyer," *i.e.*,

16   Epicrew, "based on its prior sale to CAET.  Should such prior sale not occur, this invoice shall be

17   null and void."  (Frimel Decl. Exh. A, ¶ 5; *id.* Exh. B, ¶ 5; Compl. ¶ 112.)  Moreover, both

18   documents said that "[t]his Agreement sets forth the entire agreement and understanding of the

19   parties and supersedes all prior agreements and understandings related to its subject matter."

20   (Frimel Decl. Exh. A, ¶ 11; *id.* Exh. B, ¶ 11.)  Thus, both Invoice Orders made apparent to

21   Epicrew that their effectiveness depended on the "prior sale" of the Equipment to CAET, which

22   put Epicrew on notice that CAET did not, or at least might not, yet own the Equipment, and that

23   this statement superseded any previous discussions the parties may have had.  Even assuming

24   CAET made a statement to Epicrew implying CAET owned the Equipment prior to Epicrew's

25   execution of the Invoice Orders, Epicrew — as an "established and well-known corporation

26   specializing in semiconductor refurbishment services" (Compl. ¶ 2) — could not have reasonably

27   relied on that statement in light of the Invoice Orders' language.  *See Woods v. Google, Inc.*, 889

28   F. Supp. 2d 1182, 1196 (N.D. Cal. 2012) (dismissing fraud claim because plaintiff, "[i]n light of

-10-

1    [his] sophistication as an attorney, . . . could not have reasonably relied upon [defendant's]

2    AdSense Policies because, as discussed above, they contradict the clear language of the

3    Agreement" between the parties); *Baymiller*, 2000 WL 33774562, *4 (dismissing fraud claim

4    because "there cannot be reasonable reliance upon misrepresentations or a failure to disclose that

5    are contradicted by the express language of the insurance contracts").

6              **C.  The Economic Loss Rule Precludes Epicrew's Fraud Claims**

7              The economic loss rule is meant to limit a plaintiff to "recover[ing] in contract for purely

8    economic loss due to disappointed expectations, unless he can demonstrate harm above and

9    beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979,

10   988 (2004).  This is because "[a]llowing parties to essentially recover for breach of contract in

11   tort undermines the 'predictability' that parties seek when they enter into a contract." *Body*

12   *Jewelz Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1093 (C.D. Cal. 2017).  As discussed,

13   Epicrew's breach of contract claim alleges that, per the Invoice Orders, "CAE was obligated to . .

14   . deliver the" Equipment "in a timely manner" (Compl. ¶¶ 36, 43), not to "purport[] to own"

15   equipment "which it did not in fact own," and not to "violat[e] the implied covenants of good

16   faith and fair dealing" (*id.* ¶¶ 37, 44).  Likewise, Epicrew's fraud and intentional

17   misrepresentation claims assert that CAET represented that it owned the Equipment and would

18   deliver it to Epicrew, but did not.  (*See id.* ¶ 63 (CAET "defraud[ed] EPICREW by purporting to

19   sell systems and equipment that it did not own"); *id.* ¶¶ 77, 81 ("CAE's representations that it

20   owned the Centura and Epsilon systems were false," and "EPICREW was harmed by way of

21   paying for both the Centura and Epsilon systems in full and never receiving such systems").)

22             As both Epicrew's breach of contract claims and its fraud and intentional

23   misrepresentation claims allege, in essence, that CAET promised to deliver the Equipment to

24   Epicrew but did not, the economic loss rule precludes Epicrew's Third and Fifth Causes of

25   Action.  *See JMP Secs. LLP*, 880 F. Supp. 2d at 1043 (as plaintiff's "fraud and negligent

26   misrepresentation . . . . claims consist of nothing more than [defendant's] alleged failure to make

27   good on its contractual promises," "both claims are barred by California's economic loss rule");

28   *Oracle USA, Inc. v. XL Global Servs., Inc.*, No. C 09-00537, 2009 WL 2084154, *2, 4 (N.D. Cal.

Jul. 13, 2009) (claim that defendant falsely promised to "pay its outstanding bills in exchange for . . . free consulting services" to "induc[e] [plaintiff] to provide free additional consulting services" barred by economic loss rule, as "[t]here is no conduct at issue which is independent from the various promises made by the parties in the course of their contractual relationship"); *Foster Poultry Farms v. Alkar-Rapidpak-MP Eqpmt., Inc.*, 868 F. Supp. 2d 992, 994 (E.D. Cal. 2012) (as plaintiff's fraud and breach of contract claims both "seek[] indemnification for the expenses it incurred in defending the . . . lawsuit," "the fraud claim is barred by the economic loss rule").

To the extent Epicrew is attempting to rely on the "fraudulent inducement" exception to the economic loss rule, it cannot do so.  As discussed, Epicrew fails to identify any statement to the effect that CAET owned the Equipment that could have induced Epicrew to sign the Invoice Orders.  *See United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1188 (C.D. Cal. 2009) (although "[t]he economic loss rule poses no barrier to a properly pled fraudulent inducement claim," misrepresentations alleged in complaint "are irrelevant," as they "concern [defendant's] general operations, not its underwriting standards for the loans" at issue, and thus fraudulent inducement claim dismissed).  Nor can Epicrew base its claim of fraudulent inducement on any statement in the Invoice Orders themselves.  *See Foster Poultry Farms*, 868 F. Supp. 2d at 993 (where, "under [plaintiff's] . . . fraudulent inducement theory, the misrepresentation that forms the basis of the fraud claim is *the contract itself*," fraud claim was "barred by the economic loss doctrine") (emphasis added).

## IV.   EPICREW'S FOURTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION SHOULD BE DISMISSED

Epicrew's Fourth Cause of Action for Negligent Misrepresentation should be dismissed for the same reasons applicable to the Third and Fifth Causes of Action.

*First*, "[i]t is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements."  *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (citing *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F. Supp. 1053, 1058 (N.D. Cal. 1991)).  Epicrew's negligent misrepresentation claim fails to do so.  This cause of action, like Epicrew's fraud claims, alleges

1  CAET "made misrepresentations to EPICREW and suppressed key facts from EPICREW relative

2  to CAE's ownership of the Centura and Epsilon systems." (Compl. ¶ 69.)  CAET's alleged

3  misrepresentations "includ[e] but [are] not limited to those set forth in paragraphs 57 through 67

4  hereof," which are paragraphs in Epicrew's Third Cause of Action for fraud.  (*Id.* ¶¶ 57-67.)  As

5  discussed, those paragraphs fail to set forth, with particularity, a statement by CAET to the effect

6  that it owned the Equipment that could have induced Epicrew to purchase the Equipment.  (*See* §

7  III.A *supra*.)  Even if Rule 9(b) did not apply, the more lenient Rule 8(a) standard would still

8  require Epicrew to identify an actionable statement, which it has not done.  *See, e.g., Jacobson v.*

9  *Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004) (dismissing defamation claim

10  because, "[e]ven under liberal federal pleading standards, 'general allegations of the defamatory

11  statements' which do not identify the substance of what was said are insufficient"); *Silicon*

12  *Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1314 (N.D. Cal. 1997) (same).

13       *Second*, as discussed (*see* § III.A *supra*), the Invoice Orders provided that their validity

14  was contingent upon the supplier's "prior sale" of the Equipment to CAET.  Thus, even assuming

15  CAET did say something implying it owned the Equipment, the terms of the Invoice Orders

16  precluded Epicrew from reasonably relying on that statement.

17       *Third*, the economic loss rule precludes this claim.  Per the complaint, Epicrew was

18  harmed by CAET's alleged, negligent misrepresentation because Epicrew "deci[ded] to enter into

19  the Agreement," as "EPICREW would not have entered into the Agreement with CAE" had it

20  known CAET did not own the Equipment.  (Compl. ¶ 72.)  Thus, the promise CAET allegedly

21  failed to comply with, and the resulting harm, are identical to those alleged in Epicrew's breach

22  of contract claim, and hence the Fourth Cause of Action fails to state a claim.  (*See* § III.C *supra*.)

23  As to the "fraudulent inducement" exception to the economic loss rule discussed above, that

24  exception does not apply to negligent misrepresentation claims.  *See Veasna Chan Hun v. Hajjar*,

25  No. CV 18-10330, 2019 WL 8221087, *5 (C.D. Cal. Sept. 3, 2019) ("If Defendants did not

26  intentionally, but only negligently misrepresented the information that caused Plaintiff to enter

27  the MOU, the economic loss rule still bars this claim," because "courts have routinely held that

28  the economic loss rule bars negligent misrepresentation claims even 'where the alleged

-13-

1   misrepresentations were made in the course of forming the contract'") (internal citation omitted).

2   But even if the fraudulent inducement exception can apply to negligent misrepresentation claims,

3   Epicrew, as discussed (*see* § III.A *supra*), fails to plead a false representation with particularity.

4   ## V.   EPICREW'S SIXTH CAUSE OF ACTION FOR "CONCEALMENT" SHOULD BE DISMISSED

5   ### A.   Epicrew Fails to Plead Fraudulent Concealment with Particularity

6   "Fraudulent concealment is one of the four forms of fraud recognized under California

7   law." *Immobiliare, LLC v. Westcor Land Title Ins. Co.*, 424 F. Supp. 3d 882, 888 (E.D. Cal.

8   2019) (citing *Finch Aerospace Corp. v. City of San Diego*, 8 Cal. App. 5th 1248, 1252-53

9   (2017)).   As it is a form of fraud, fraudulent concealment must be pleaded with particularity.   *See*

10  *id.* at 890 (dismissing fraudulent concealment claim because plaintiff "failed to identify the . . .

11  employee" of defendant "who committed the fraudulent concealment as required by Rule 9(b)");

12  *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) ("[A]

13  plaintiff alleging fraudulent omission or concealment must still plead the claim with

14  particularity").   "The elements of fraudulent concealment are:   (1) the defendant concealed or

15  suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff;

16  (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the

17  plaintiff; (4) the plaintiff was unaware of the fact and would not have acted as he did if he had

18  known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression

19  of the fact, the plaintiff sustained damage." *Burch v. CertainTeed Corp.*, 34 Cal. App. 5th 341,

20  348 (2019) (emphasis added).   The complaint does not plead these elements with particularity.

21  #### 1.   Epicrew fails to allege an act of concealment or suppression

22  Epicrew claims CAET concealed the fact that CAET did not own the Equipment by

23  "refusing to provide serial numbers, crate sizes, and weights of the systems as requested,"

24  "refusing to provide EPICREW with exact or approximate dates for delivery," "refusing to

25  provide EPICREW with timely updates on the delivery status for the Centura and Epsilon

26  systems," and "avoiding continuous communication efforts by EPICREW to facilitate delivery of

27  the Centura and Epsilon systems."   (Compl. ¶ 86.)   But Epicrew fails to explain how any of those

28

-14-

1   alleged actions could have led Epicrew to believe CAET owned the Equipment.  Nor does

2   Epicrew say whether CAET did those alleged acts before or after Epicrew signed the Invoice

3   Orders, which is important because Epicrew cannot have been induced to sign the orders by acts

4   taken after they were signed.  (*See* § III.A.2 *supra*.)  It is unclear, for instance, why CAET's

5   alleged refusal to "provide serial numbers, crate sizes, and weights of the systems" supposedly

6   led Epicrew to think CAET owned the Equipment — if anything, CAET's alleged inability to

7   provide such information should have led Epicrew to believe the opposite.  *See Reveal Chat*

8   *Holdco, LLC v. Facebook, Inc.,* 471 F. Supp. 3d 981, 993 (N.D. Cal. 2020) (as plaintiffs failed to

9   allege "affirmative conduct on the part of [defendants] to mislead Plaintiffs or the market,"

10   fraudulent concealment claim dismissed); *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 888-90

11   (N.D. Cal. 2015) (as complaint "contains no examples of efforts by [defendant's] personnel to

12   keep discussions about the Hands-Off List confidential," and, "[i]f anything, the emails suggest

13   that [defendant] readily discussed its non-solicitation agreements to ensure that . . . employees

14   adhered to the No-Hire List," it failed to allege "affirmative act[s] of fraudulent concealment").

### 2.   Epicrew fails to specify who from CAET engaged in the purported fraudulent concealment

15

16          Assuming Epicrew's list of purported acts of concealment is meant to refer to the

17   statements and conduct attributed to CAET in the complaint's "Background" section (Compl. ¶¶

18   11-33), the only CAET personnel identified in those allegations are (1) David Sardi, in

19   connection with his transmission of the Invoice Orders to Epicrew on May 23, 2023 and

20   November 30, 2023 (*id.* ¶¶ 12, 22), and (2) Annamaria Kaposztassy, who sent an email "[o]n

21   December 8, 2023" "fail[ing] to provide any information requested by EPICREW" (*id.* ¶ 25).

22   Aside from the fact that none of those alleged statements concerned CAET's ownership of the

23   Equipment, Sardi's mere, alleged sending of the Invoice Orders cannot be said to have

24   "concealed" any facts, and Kaposztassy's December 8, 2023 email came *after* the alleged

25   execution of both Invoice Orders (on, respectively, May 24, 2023 and November 30, 2023

26   (Compl. ¶ 14; Frimel Decl. Exh. B, at 2)).  Epicrew's failure to specify who engaged in the

27   alleged acts of concealment requires the dismissal of this claim under Rule 9(b).  *See*

28

-15-

1   *Immobiliare, LLC*, 424 F. Supp. 3d at 890; *Wiskind,* 2015 WL 400549, *3.

2   **B.  The Terms of the Invoice Orders Preclude Epicrew's Claim**

3   As discussed (*see* § III.B *supra*), the Invoice Orders specified that Epicrew's ability to

4   purchase the Equipment was contingent upon the "prior sale," by a third party, of the Equipment

5   to CAET, and thus put Epicrew on notice that CAET did not necessarily own the Equipment.

6   Thus, even if the complaint pleads acts of fraudulent concealment that could have induced

7   Epicrew to execute the Invoice Orders, Epicrew could not have reasonably relied on that conduct.

8   **C.  The Economic Loss Rule Bars Epicrew's Claim**

9   Epicrew claims to have been harmed by CAET's purported concealment of its lack of

10   ownership of the Equipment because, "if CAE had disclosed this fact, EPICREW would not have

11   entered into the Agreements with CAE . . . ." (Compl. ¶ 90.)  Thus, the injury Epicrew claims to

12   have suffered due to CAET's alleged concealment is identical to the injury it claims to have

13   sustained due to CAET's purported breach of contract — *i.e.*, Epicrew paid for equipment it did

14   not receive.  (*See id.* ¶¶ 37, 44.)  Thus, the economic loss rule also precludes this claim.  (*See* §

15   III.C *supra*; *see also Mosqueda v. Am. Honda Motor Co.*, 443 F. Supp. 3d 1115, 1134 (C.D. Cal.

16   2020) ("Because Plaintiffs concede that they seek only economic damages and premise their

17   fraud claim on alleged omissions, . . . Plaintiffs' fraudulent omission claim is barred by the

18   economic loss rule.").)

19   **VI.   EPICREW'S SEVENTH CAUSE OF ACTION FOR "FALSE PROMISE"
         SHOULD BE DISMISSED**

20
21   Epicrew alleges that "CAE made a promise to EPICREW that it would sell the Centura

22   and Epsilon systems to EPICREW," but "did not perform the promised act . . . ." (Compl. ¶¶ 92,

96.)  The complaint does not identify any supposed promise to sell the Equipment to Epicrew
23
24   outside of the Invoice Orders' alleged commitment to "deliver the" Equipment "in a timely

25   manner."  (*Id.* ¶¶ 37(a), 44(a).)  Thus, it appears this cause of action is meant to allege that CAET

26   entered into the Invoice Orders with the intent not to perform its obligations under them.  This

claim must be dismissed for reasons similar to those previously described.
27

28

**A.  Epicrew Fails to Plead Fraud with Particularity**

"False promise," also known as promissory fraud, "is a type of fraud," and "Ninth Circuit law governing the pleading requirements for a fraud claim is based on Fed. R. Civ. Proc. 9(b) . . . ."  *Epitech, Inc. v. Cooper Indus., PLC*, No. 11-cv-1693, 2011 WL 5118767, *1 (S.D. Cal. Oct. 28, 2011).  "Although intent" to defraud "can be averred generally under Rule 9(b), a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation."  *Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. CV 07-CV-912, 2007 WL 2206946, *6 (S.D. Cal. July 27, 2007).  "Mere nonperformance of a promise does not suffice to show the falsity of the promise."  *UMG Recordings, Inc. v. Global Eagle Ent'mt., Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015).  Epicrew's only allegation supposedly indicating fraudulent intent is that "CAE did not intend to perform this promise when it was made because it did not at the time own the Centura and Epsilon systems that it purported to sell." (Compl. ¶ 93.)  Epicrew does not explain why CAET's alleged lack of ownership of the Equipment reflects CAET's intent to defraud Epicrew.  In fact, as discussed (*see* § III.A *supra*), CAET disclosed the fact that it may not own the Equipment to Epicrew in the Invoice Orders. The mere fact that CAET acts as a reseller is not, in itself, evidence of its intent to defraud.  *See Ovitz v. Chartis Prop. Cas. Co.*, CV 15-3916, 2015 WL 12746209, *7 (C.D. Cal. Sept. 14, 2015) (despite complaint's allegation, to show fraudulent intent, that defendant insurer "fail[ed] to even attempt performance" regarding coverage for lost painting, complaint failed to plead intent, as it alleged that "Defendant . . . did attempt performance," as it "ultimately paid" the painting's "full scheduled value"); *N. Am. Co. for Life & Health Ins. v. Zhang*, No. CV 18-01872, 2019 WL 1060616, *2 (C.D. Cal. Jan. 3, 2019) (complaint failed to plead fraudulent intent because, although it alleged that defendant's "soliciting agents filled out [plaintiff's] application with knowledge that [plaintiff] did not understand it," it did "not assert that" agents "applied any pressure to get [plaintiff] to sign, or made any false or dishonest statements").

**B.  The Economic Loss Rule Precludes Epicrew's Promissory Fraud Claim**

"[P]romissory fraud claims are subject to the economic loss rule."  *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1104.  As this claim is premised on CAET's alleged breach of the same

1   promise it made in the Invoice Orders, the economic loss rule bars it.  *See id.* at 1106 (dismissing

2   promissory fraud claim because "Counterclaimants effectively seek to take 'allegations

3   underpinning a straightforward claim for breach of a commercial contract and recast them as

4   torts,' which 'consist of nothing more than [defendants'] alleged failure to make good on its

5   contractual promises'") (quoting *JMP Secs. LLP*, 880 F. Supp. 2d at 1041).

## VII.   EPICREW'S EIGHTH CAUSE OF ACTION UNDER CAL. BUS. & PROF. CODE § 17200 SHOULD BE DISMISSED

Epicrew appears to assert two theories of liability under Cal. Bus. & Prof. Code § 17200.

First, Epicrew claims that "CAE's refusal to refund EPICREW's advance payments despite the

undisputed fact that EPICREW never received either system for which it paid CAE is a plain

violation of Section 17200 as an unfair and fraudulent business act."  (Compl. ¶ 102.)  Second,

Epicrew alleges that, "[b]y purporting to sell EPICREW the Centura and Epsilon systems and

accepting advance payment on each, CAE misled and intentionally deceived EPICREW to

believe that CAE indeed owned the systems."  (*Id.* ¶ 101.)  Neither theory states a claim.

### A.   CAET's Alleged Refusal to Refund Epicrew's Payments

"[A] plaintiff may proceed under the UCL," *i.e.*, Section 17200, "on three possible

theories.  First, 'unlawful' conduct that violates another law is independently actionable under §

17200. . . . Alternatively, a plaintiff may plead that defendants' conduct is 'unfair' within the

meaning of the several standards developed by the courts. . . . Finally, a plaintiff may challenge

'fraudulent' conduct by showing that 'members of the public are likely to be deceived' by the

challenged business acts or practices."  *Garcia v. Sony Computer Ent'mt. Am., LLC,* 859 F. Supp.

2d 1056, 1061-62 (N.D. Cal. 2012) (internal citations omitted).

#### 1.   The "fraudulent" prong

"Conduct that is considered deceptive or misleading runs afoul of the . . . fraudulent prong

of the UCL when it is 'likely to deceive' a 'reasonable consumer.'"  *Eidmann v. Walgreen Co.*,

522 F. Supp. 3d 634, 643 (N.D. Cal. 2021).  "Plaintiff's UCL claim under the 'fraudulent' prong

is governed by the pleading requirements of Rule 9."  *In re Outlaw Lab., LLP*, 463 F. Supp. 3d

1068, 1088 (S.D. Cal. 2020).  This theory does not meet Rule 9's requirements.

-18-

1   Epicrew does not, and cannot, identify why CAET's alleged failure to provide a refund

2   was somehow "fraudulent."  To the contrary, the Invoice Orders provide that "[t]his sale is final,

3   and no refund shall be issued to Buyer" (Frimel Decl. Exh. A, ¶ 23; *id.* Exh. B, ¶ 23), and

4   Epicrew identifies no statement by CAET to the effect that a refund was available.  *See Eidmann*,

5   522 F. Supp. 3d at 645 (dismissing Section 17200 claim under "fraudulent" prong, as "[n]o

6   reasonable consumer would understand [defendant's] Infants' Product to be specially formulated,

7   in light of the numerous express statements regarding the acetaminophen concentration,

8   overlapping age ranges," and so forth on the packaging, and thus plaintiff "has failed to show

9   how [defendant's] marketing of Infants' Product is false and misleading"); *Lokey v. CVS Pharm.,*

10  *Inc.*, No. 20-cv-04782, 2020 WL 6822890, *5 (N.D. Cal. Nov. 20, 2020) (dismissing Section

11  17200 fraud claim because "[t]he labels" on defendant's products "are not deceptive").

### 2.   The "unlawful" prong

13  Epicrew does not identify any statute, regulation or other legal rule supposedly violated by

14  CAET's alleged refusal to provide a refund.  Nor could Epicrew likely do so, given the Invoice

15  Orders' statement that no refund was available.  Thus, Epicrew's Eighth Cause of Action should

16  be dismissed to the extent it proceeds on this theory.  *See In re Outlaw Lab., LLP*, 463 F. Supp.

17  3d at 1090 (dismissing claim for violation of "unlawful" prong of Section 17200 because plaintiff

18  "does not 'identify the particular section of [any] statute that was violated' by [defendants'] . . .

19  sale of the Rhino Products or 'describe with reasonable particularity the facts supporting the

20  violation'") (quoting *LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*, No. 18-cv-02573,

21  2019 WL 160335, *13 (N.D. Cal. Jan. 10, 2019)).

### 3.   The "unfair" prong

23  "[F]or unfairness cases predicated on public policy, 'the public policy which is a predicate

24  to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions.'"

25  *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1171 (C.D. Cal. 2014) (quoting *Durell v.*

26  *Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (2010)).  Alternatively, "[t]o show a business

27  practice is unfair, the plaintiff must show the conduct 'threatens an incipient violation of an

28  antitrust law, or violates the policy or spirit of one of those laws because its effects are

-19-

comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *Id.* (quoting *Durell*, 183 Cal. App. at 1366). Epicrew fails to identify either a "constitutional, statutory or regulatory provision," or an "antitrust law" or "policy or spirit of one of those laws," violated by CAET's alleged refusal to provide a refund. Thus, Epicrew does not state a claim under this theory. *See Boris*, 35 F. Supp. 3d at 1171 (dismissing Section 17200 "unfairness" claim because "Plaintiffs have not pointed to any specific constitutional, statutory, or regulatory provision that embodies a policy that [defendant's] price and red packaging violate").

### B.   CAET's Alleged, False Claim to Own the Equipment

"Rule 9(b) applies to claims under California's UCL . . . that 'allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis' for liability." *Garcia,* 859 F. Supp. 2d at 1061 (quoting *Kearns*, 567 F.3d at 1125). This is true regardless of which prong of Section 17200 the plaintiff proceeds under. *See id.* at 1063-66 (applying Rule 9(b) to claims under all Section 17200 prongs); *see also Avila v. Wells Fargo Bank*, No. C 12-01237, 2012 WL 4097744, *4 (N.D. Cal. Sept. 17, 2012) ("Because plaintiff's 'unfair and deceptive practices' claims" under Section 17200 "'sound in fraud,' he must satisfy Rule 9(b)'s pleading requirement."). As noted, Epicrew's assertion that CAET falsely claimed to own the Equipment does not comply with Rule 9(b). Epicrew fails to allege any statement by CAET to that effect, or who made it. (*See* § III.A *supra*.) Further, the Invoice Orders preclude Epicrew from reasonably relying on such a purported statement. (*See* § III.B *supra*.) Epicrew's citation to three other lawsuits allegedly filed against CAET (Compl. ¶¶ 103-107) does not salvage this claim. Epicrew claims those alleged cases show that CAET has a "history of inducing buyers to enter agreements with CAE in which it purported to sell certain systems and equipment that it did not own at the time of accepting payment." (*Id.* ¶ 103.) "An action under § 17200, however, cannot be brought unless the plaintiff satisfies the 'standing requirement' set forth in" Cal. Bus. & Prof. Code § 17204 — "specifically, that the plaintiff 'has suffered an injury in fact and has lost money or property as a result of the unfair competition . . . .'" *Greenpeace, Inc. v. Walmart Inc.*, No. 21-cv-00754, 2021 WL 4267536, *1 (N.D. Cal. Sept. 20, 2021). Thus, Epicrew, "to establish standing, must plead its reliance on th[e] statements" by CAET. *Id.* at *2; *see also In re iPhone App. Litig.*,

6 F. Supp. 3d 1004, 1013-14 (N.D. Cal. 2013) (same).  As Epicrew fails to do so (*see* § III *supra*), the alleged fact that others were harmed by CAET's conduct does not save Epicrew's Section 17200 claim.  In any event, Epicrew's descriptions of the three lawsuits nowhere say the plaintiffs in those cases alleged that CAET claimed to own equipment it did not own.  (Compl. ¶¶ 104-06.)

## VIII.  EPICREW'S NINTH CAUSE OF ACTION FOR "DECLARATORY RELIEF" SHOULD BE DISMISSED

Epicrew's declaratory relief claim makes allegations that duplicate those of Epicrew's other claims.  Specifically, Epicrew says declaratory relief is needed because there is a "justiciable question as to the parties' rights and obligations under the Agreements," namely "that CAE was obligated to own the equipment and/or systems it purported to sell to EPICREW upon accepting advance remittance of the purchase price."  (Compl. ¶ 110.)  As discussed, CAET's purported claim to own the Equipment forms the basis for nearly every other cause of action in the complaint.  (See *id.* ¶¶ 37(b), 44(b) (First Cause of Action); *id.* ¶ 63 (Third Cause of Action); *id.* ¶ 67 (Fourth Cause of Action); *id.* ¶ 76 (Fifth Cause of Action); *id.* ¶ 85 (Sixth Cause of Action); *id.* ¶ 93 (Seventh Cause of Action); *id.* ¶ 101 (Eighth Cause of Action).)  As "[a] claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action," and "the declaratory relief Plaintiffs seek is entirely commensurate with the relief sought through their other causes of action," this claim should be dismissed.  *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707-08 (N.D. Cal. 2009); *see also DXC Tech. Co.*, 2024 WL 2882565, *7 (dismissing declaratory relief claim because it "amounts to a backward-looking breach of contract claim").  In any event, the Invoice Orders advised Epicrew that the delivery of the Equipment was contingent on its "prior sale" to CAET, and thus that it was possible that CAET did not own the Equipment at the time the orders were executed.  (*See* § III.B *supra*.)

Dated:  July 17, 2024

/s/ William J. Frimel

WILLIAM J. FRIMEL
Attorneys for Defendant
CAPITAL ASSET EXCHANGE & TRADING LLC