UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EPICREW CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ASSET EXCHANGE AND TRADING, LLC, et al.,<br><br>Defendants. | Case No.   24-cv-03676-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 53 |

Plaintiff Epicrew Corporation ("Epicrew") brings this action against Defendants Capital Asset Exchange and Trading, LLC ("Capital Asset"), Ryan Jacob, Austin Gill, and David Ruiz seeking damages for Capital Asset's alleged failure to deliver semiconductor equipment that Epicrew had purchased.  First Am. Compl. ("FAC"), ECF No. 51.  Before the Court is Defendants' motion to dismiss under Rule 12(b)(6) for failure to state a claim.  Mot., ECF No. 53. Plaintiff filed an Opposition, and Defendant filed a Reply.  Opp., ECF No. 60; Reply, ECF No. 61. Having reviewed the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b).  For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss under Rule 12(b)(6).

## I.    BACKGROUND

### A.  Parties

Plaintiff is a corporation headquartered in Omura, Nagasaki, Japan, and specializes in semiconductor refurbishment services.  FAC ¶ 2.

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
1

Defendant Capital Asset is a company with its principal place of business in Santa Clara, California. *Id.* ¶ 3. Defendant Ryan Jacob is Capital Asset's Chief Executive Officer. *Id.* ¶ 4. Defendant Austin Gill is Capital Asset's Chief Operating Officer. *Id.* ¶ 5. And Defendant David Ruiz is Capital Asset's Managing Director. *Id.* ¶ 6. Mr. Jacob, Mr. Gill, and Mr. Ruiz all reside outside of California, but Plaintiff alleges on information and belief that they regularly conduct business in California on behalf of Capital Asset. *Id.* ¶¶ 4–6.

### B. Factual Background

Plaintiff alleges that in early 2023, Defendant Capital Asset "targeted" Plaintiff as a "likely buyer" of semiconductor equipment. *Id.* ¶ 15. In response, Plaintiff requested that Capital Asset provide an image and serial number for Applied Materials' Centura system, which Plaintiff was interested in purchasing. *Id.* ¶ 16. Capital Asset responded stating that the image and serial number were not available because the system was "still in operation." *Id.* On May 23, 2023, Capital Asset sent Plaintiff an invoice stating that the Centura system plus crating and shipment to Japan would cost $965,000. *Id.* ¶ 17. Later that day, Capital Asset sent Plaintiff an email stating, in relevant part, "This equipment will be released soon, but it usually takes 3–4 weeks for the supplier to arrange removal. If Epicrew signs before the other offer, our bid of $950K will be accepted. If our second signs, the first buyer will receive the equipment." *Id.* ¶ 18. On May 24, 2023, Plaintiff signed and submitted the invoice; the next day, Plaintiff wired $965,000 to Capital Asset. *Id.* ¶ 21.

By November, Plaintiff still had not received the Centura system. *Id.* ¶ 23. Plaintiff alleges that in late November and early December 2023, Plaintiff emailed back and forth with Capital Asset to see if delivery was forthcoming. *Id.* ¶¶ 24–27. The Centura never arrived. *Id.* On information and belief, Plaintiff alleges that Capital Asset never intended to complete delivery, instead misappropriating the $965,000 "to cover internal business expenses, including executive

compensation for Defendants Jacob, Gill, and Ruiz." *Id*. ¶ 28.

Plaintiff alleges that a similar series of events occurred when it tried to purchase an ASM Epsilon EPI system ("the Epsilon system"). According to Plaintiff, on November 30, 2023, Capital Asset sent an invoice to Plaintiff offering to sell the Epsilon system for $125,000. *Id*. ¶ 32. Plaintiff responded, asking for confirmation of the equipment's shipping origin. *Id*. ¶ 33. When Capital Asset replied saying that the Epsilon system would be shipped from Singapore, Plaintiff wired $125,000 to Capital Asset. *Id*. ¶ 34. Over the following month, Plaintiff and Capital Asset again emailed back and forth as Plaintiff tried to secure delivery of the Epsilon system. *Id*. ¶¶ 35–40. Plaintiff alleges Capital Asset never delivered any of the equipment Plaintiff ordered, nor has Capital Asset provided a refund. *Id*. ¶¶ 42–43.

Plaintiff alleges nine claims: breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, intentional misrepresentation, concealment, false promise, violation of California's Unfair Competition Law ("UCL"), and declaratory relief. *See* FAC. Capital Asset moves to dismiss all claims except those for breach of contract and declaratory relief. *See* Mot.

### C. Procedural History

Plaintiff first filed suit in June 2024, naming only Capital Asset as defendant. Compl., ECF No. 1. Capital Asset moved to dismiss that complaint for failure to state a claim. ECF No. 13. The Court held that Plaintiff could proceed with two claims: its claim for breach of contract based on Capital Asset's alleged failure to timely deliver the promised equipment, and its claim for declaratory relief stating the two contracts are null and void. Order, ECF No. 47 at 7. The Court dismissed the remaining seven claims with leave to amend. *Id*.

## II.    INCORPORATION BY REFERENCE

Before turning to the motion to dismiss, the Court will first set the scope of the record. In

United States District Court
Northern District of California

general, a court may not consider material beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018). The only exceptions to this rule are documents that are the subject of judicial notice, appended to the complaint, or incorporated by reference. *Id.*

Defendants' motion to dismiss cites to invoices for the Centura and Epsilon Systems. *See* Epicrew Contracts, ECF Nos. 54-1, 54-2.[1] These documents were not appended to the complaint. *See* FAC. But they are incorporated by reference because they "form the basis of" Plaintiff's contract claims: Plaintiff claims that Defendants breached these contracts. *Khoja*, 899 F.3d at 1002 (citation omitted). Therefore, the Court can consider the contracts.

### III.   MOTION TO DISMISS

#### A.  Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). When deciding whether to grant a motion to dismiss under Rule 12(b)(6), the court must generally accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). While a plaintiff need not offer detailed factual allegations to meet this standard, she is required to offer "sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must construe the alleged facts and inferences in the light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) ("[The court] must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of

---

[1] The relevant items are identical in both contracts, so the Court cites the two together.

United States District Court
Northern District of California

the nonmoving party.").  However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Additionally, claims sounding in fraud must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See Vess v. Ciba-Geigy Corp*. USA, 317 F.3d 1097, 1102–03 (9th Cir. 2003).  Under Rule 9(b), a party "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Typically, Rule 9(b) requires the party alleging fraud to plead "the who, what, when, where, and how" of the misconduct.  *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

### B.  Discussion

#### 1.  All Causes of Action as to Individual Defendants

Plaintiff's initial complaint named only Capital Asset as a defendant.  *See* Compl.  The FAC adds Defendants Jacob, Gill, and Ruiz as defendants.  *See* FAC.  On information and belief, Plaintiff alleges that Defendants Jacob, Gill, and Ruiz "intentionally undercapitalized CAE to perpetrate fraud while avoiding personal liability to creditors such as Epicrew," "misused corporate funds for their own benefit," and "authorized, directed, and/or participated in the fraudulent conduct."  FAC ¶¶ 45, 82.  Plaintiff believes that these allegations are adequate to establish that Defendants Jacob, Gill, and Ruiz are liable for Capital Asset's alleged wrongdoing both as Capital Asset's alter egos and as participants in the alleged fraud.  *Id.* ¶ 46.

#### a.  Alter Ego Theory of Liability

In moving to dismiss, Defendants argue that Plaintiff has failed to allege specific facts to support the allegations that Jacob, Gill, and Ruiz used Capital Asset as an alter ego.  Mot. at 6–7.  In Opposition, Plaintiff argues that "[p]leading on information and belief is permissible where the facts supporting the allegation . . . are exclusively within the defendants' control."  Opp. at 5 (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)).

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
5

Defendants are correct. To adequately plead an alter ego relationship, "a plaintiff must allege specifically both the elements of alter ego liability, as well as facts supporting each." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014). This holds true even when a plaintiff pleads on information and belief. *See Carlson v. Clapper*, No. 18-CV-07195-VKD, 2019 WL 2211196, at *7 (N.D. Cal. May 22, 2019); *Emps. Tr. Fund v. Am. Empire Bldg. Corp.*, No. 14-CV-04054-NC, 2015 WL 4538070, at *3 (N.D. Cal. July 27, 2015) (alleging the elements of unity "on information and belief" without any further factual allegations is insufficient to survive a motion to dismiss).

Here, Plaintiff alleges that Defendants Jacob, Gill, and Ruiz "intentionally undercapitalized [Capital Asset] to perpetrate fraud" and "misused corporate funds for their own benefit," and that Capital Asset "divert[ed] the funds" from the transactions "to cover . . . executive compensation for Defendants Jacob, Gill, and Ruiz." FAC ¶¶ 45, 28. But Plaintiff offers neither facts to support these allegations nor even facts on which their belief in these allegations is based. As a result, the Court finds Plaintiff has not adequately pled that Defendants Jacob, Gill, and Ruiz acted as Capital Asset's alter ego.

### b. Direct Liability as Corporate Officers

In moving to dismiss, Defendants also argue that Plaintiff has failed to allege specific facts to support the claim that Jacob, Gill, and Ruiz individually participated in the alleged fraud. Mot. at 6–7. Plaintiff counters that executives should be liable for the torts that they directed. Opp. at 6 (citing *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1381 (2000)).

Corporate directors certainly owe a duty of care to refrain from acting in a manner that creates an unreasonable risk of injury to third parties. *PMC*, 78 Cal. App. 4th at 1381. But the Court agrees with Defendants: under Rule 9(b), Plaintiff must plead facts indicating that there had been a breach of that duty. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d at 540. This can

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
6

be difficult in cases of corporate fraud, when a plaintiff will not have personal knowledge of all the underlying facts. *Moore*, 885 F.2d at 540. In those situations, the Ninth Circuit has relaxed the pleading standard, providing that "the particularity requirement may be satisfied if the allegations are accompanied by a statement of facts on which the belief is founded." *Id.* (citing *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), *rev'd on other grounds*, *Flood v. Miller*, 35 Fed. App'x 701, 703 n.3 (9th Cir. 2002); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1298 (4th ed. 2025).

Here, Plaintiff has provided no such facts. Plaintiff argues that "it is more than plausible that a fraudulent scheme of this magnitude . . . was known to and directed by its C-suite executives." Opp. at 6. But Plaintiff has not stated on what facts that belief is founded.

*** 

In sum, Plaintiff has not adequately pled that the individual defendants are liable either under a theory of alter ego or direct liability. Nonetheless, the FAC marks Plaintiff's first attempt at establishing liability for the individual defendants. Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 701 (9th Cir. 2011). "Absent a showing of prejudice, delay, bad faith, or futility, there is a strong presumption in favor of granting leave to amend." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 956 (N.D. Cal. 2017) (citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)), *aff'd*, 745 F. App'x 8 (9th Cir. 2018). It is possible that Plaintiff could plead additional facts establishing alter ego or direct liability. Given the presumption in favor of granting leave to amend, the Court DISMISSES all claims against the individual defendants with LEAVE TO AMEND.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing (Count II)

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Plaintiff claims that Capital Asset breached the implied covenant of good faith and fair dealing by (1) delaying or refusing to deliver the Centura and Epsilon systems in a timely manner, (2) failing to provide status updates, (3) ignoring Plaintiff's demands for performance or refund, (4) retaining payments without performing obligations, and (5) "engaging in conduct that unfairly frustrated Epicrew's rights to receive the benefits of the Agreements."  FAC ¶ 67.  In moving to dismiss, Capital Asset argues that Plaintiff's claim fails regardless of whether it is based in tort or in contract.  Mot. at 7–8.

### a.   Implied Covenant in Tort

A plaintiff cannot sue in tort for breach of the implied covenant of good faith and fair dealing unless there is a "special relationship with fiduciary characteristics" between the two parties.  *Pension Tr. Fund for Operating Eng'rs. v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (citation modified).  Thus, "the implied covenant tort is not available to parties of an ordinary commercial transaction where the parties deal at arms' length."  *Id.* (citing *Mitsui Mfrs. Bank v. Superior Court*, 212 Cal. App. 3d 726, 730 (1989)).  Here, Plaintiff has not alleged any facts that would indicate there was a special relationship with fiduciary characteristics between Plaintiff and Defendants.  *See* FAC ¶¶ 63–70.  Accordingly, if Plaintiff's claim is in tort, it fails.

### b.   Implied Covenant in Contract

Plaintiff claims that Capital Asset breached the implied covenant of good faith and fair dealing by (1) delaying or refusing to deliver the Centura and Epsilon systems in a timely manner, (2) failing to provide status updates, (3) ignoring Plaintiff's demands for performance or refund, (4) retaining payments without performing obligations, and (5) "engaging in conduct that unfairly frustrated Epicrew's rights to receive the benefits of the Agreements."  FAC ¶ 67.

#### i.   Identification of a Specific Contractual Provision

The Court will first consider Capital Asset's argument that Plaintiff did not identify a

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

8

specific contractual provision that was frustrated. Mot. at 8. "To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated." *Id.* (quoting *Kroetch v. BAC Home Loan Servs.*, No. C 11-2860 MEJ, 2011 WL 4502350, at *3 (N.D. Cal. Sept. 27, 2011) (citation omitted)). The Court will analyze each allegation in turn.

With respect to the first allegation—that Capital Asset breached the implied covenant by delaying delivery of the equipment—the Court already found that the Epicrew Contracts contain implied terms that require delivery with a reasonable time, and that Defendant breached those terms by failing to deliver the equipment for over a year. Order at 3–4. Plaintiff cited this delay in the FAC, pleading that Capital Asset "breached the implied covenant of good faith and fair dealing by, among other things[,] [u]nreasonably delaying or refusing to deliver the Centura and Epsilon systems within a reasonable time." FAC ¶ 67. Thus, Plaintiff has identified a contractual term that was allegedly frustrated.

With respect to the second and third allegations—failing to provide status updates and ignoring demands for performance or refund—the implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Agosta v. Astor*, 120 Cal. App. 4th 596, 607 (Cal. Ct. App. 2004) (internal citation omitted). Here, Capital Asset had no contractual duty to "provide truthful updates" or to respond to "repeated inquiries and demands." *See* Epicrew Contracts. Thus, the second and third allegations cannot form the basis of a claim for breach of implied covenant.

With respect to the fourth allegation—that Capital Asset "[r]etain[ed] Epicrew's payments while failing to perform any of its material obligations"—Capital Asset argues that the Epicrew Contracts have no-refund clauses that explicitly allow them to retain Plaintiff's money. FAC ¶ 67; Mot. at 8. The contracts do have three distinct no-refund clauses. But two of those clauses seem

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

to be predicated on the goods being available for collection or delivered: Section 6 provides that "[i]f Buyer *fails to pick up* the Equipment within 60 calendar days . . . title shall revert to [Capital Asset] with no refund due to buyer," and Section 26 specifies that "Buyer shall not be able to *return* the Equipment and shall not receive a refund for any reason."  Epicrew Contracts at 1, 2 (emphasis added).  The third clause, Section 23, simply states, "This sale is final, and no refund shall be issued to Buyer."  *Id.*  But even this third clause cannot mean that Capital Asset may retain Plaintiff's payments, because California law explicitly allows a party to rescind if consideration fails "in a material respect from any cause."  Cal. Civ. Code § 1689(b)(4).  Capital Asset offers no other reason why failing to return the payments did not frustrate the contract.  As a result, the Court finds that Capital Asset has not met its burden to dismiss the claim for breach of implied covenant on these grounds.

Finally, the Court takes up the fifth allegation.  Plaintiff claims that Capital Asset "engag[ed] in conduct that unfairly frustrated Epicrew's rights to receive the benefit of the Agreements."  FAC ¶ 67.  That allegation mirrors the elements of a breach of covenant of good faith and fair dealing, which requires "a conscious and deliberate act, which unfairly frustrates the agreed common purposes . . . thereby depriving that party of the benefits of the agreement." *Schertzer v. Bank of Am., NA*, 109 F.4th 1200, 1213 (9th Cir. 2024) (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394).  The similarity between Plaintiff's allegation and the rule of law reveals this to be a "legal conclusion couched as a factual allegation," which the Court is not bound to accept as true.  *Iqbal*, 556 U.S. at 678.  As a result, this allegation does not state a claim for breach of the implied covenant.

### ii. Breach of Implied Covenant May Not Be Duplicative of Breach of Contract

Second, Capital Asset contends that if the Epicrew Contracts contain an implied term

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
10

prohibiting unreasonable delivery delays, Plaintiff's breach of implied covenant claim would be duplicative of their breach of contract claim. Mot. at 8. When a plaintiff sues in contract for breach of the implied covenant of good faith and fair dealing, she must allege more than the breach of the contractual duty itself. *Yurgevich v. Hyundai Translead*, No. 10-CV-2622-JAH (JMA), 2011 WL 13356176, at \*3 (S.D. Cal. Dec. 12, 2011) ("Although a breach of contract may also constitute a breach of the implied covenant of good faith and fair dealing, a claim that merely realleges that breach as a violation of the covenant is superfluous.") (citation modified). Here, Plaintiff's claims for breach of contract and breach of implied covenant arise out of the same allegation: that Capital Asset failed to timely deliver the promised equipment. As a result, this is duplicative of Plaintiff's breach of contract claim and thus cannot also form the basis of a breach of the implied covenant.

\*\*\*

In sum, Capital Asset has not met its burden to dismiss Plaintiff's claim for breach of implied covenant for retaining Plaintiff's payments without performing their contractual obligations. This claim may proceed on those grounds.

### 3. Fraud (Count III)

Plaintiff alleges that Capital Asset made misrepresentations that led Plaintiff to believe Defendants were in control of the Centura and Epsilon systems. FAC ¶¶ 72–80. As to the Centura system, Plaintiff claims that two statements—that "this equipment will be released soon, but it usually takes 3–4 weeks for the supplier to arrange removal," and that the "purchase has been approved" and Capital Asset would "contact [Plaintiff] within a few days to begin the tool removal process"—led Plaintiff to believe Capital Asset controlled the Centura system. *Id.* ¶¶ 72–73. Plaintiff also claims the sales literature was "misleading." *Id.* ¶ 75. As to the Epsilon system, Plaintiff alleges claims that the statements that the system "would be shipped from Singapore" and

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

that Capital Asset would provide an update on "equipment release and delivery" led Plaintiff to believe Capital Asset controlled the system. *Id.* ¶ 78. Defendants argue that each misleading statement should be dismissed for slightly different reasons, so the Court will consider each statement in turn.

*First*, there is the statement that the "equipment will be released soon," which Plaintiff alleges led them to believe that Capital Asset had already secured the Centura system. *Id.* ¶ 72. In moving to dismiss, Defendants argue that the clause that follows—"If Epicrew signs before the other offer, our bid of $950k will be accepted"—made it clear that this was not the case. Mot. at 9 (quoting FAC ¶ 18). The Court agrees with Capital Asset: the conditional nature of that second sentence shows that Capital Asset had not yet secured the equipment. Moreover, Section 5 of the Epicrew Contracts states that "[a]ll Equipment is offered to Buyer based on its prior sale to [Capital Asset]. Should such prior sale occur, this invoice shall be null and void." Epicrew Contracts at 1. As the Court explained in its prior Order, "this makes it clear that the sale of the relevant equipment to Epicrew was contingent on Capital Asset being able to buy that equipment from a third party," and thus implied the "possibility . . . that Capital Asset did not own the relevant equipment at the time." Order at 5–6. Accordingly, this statement cannot be considered a misrepresentation.

*Second*, there is the statement that Plaintiff's "purchase has been approved" and that Capital Asset would "contact [Plaintiff] within a few days to begin the tool removal process," which Plaintiff alleges also led them to believe that Capital Asset had secured the equipment. FAC ¶ 73. Capital Asset argues that since this statement was made after Plaintiff executed the invoice order, it could not have induced Plaintiff to execute that order. Mot. at 11. The Court agrees that if Capital Asset made the statement after Plaintiff executed the order, Plaintiff could not have relied on the statement in executing the order. *See, e.g., Gavaldon v. StanChart Sec. Int'l,*

*Inc.*, No. 16-CV-590-LAB (MDD), 2019 WL 764031, at \*2 (S.D. Cal. Feb. 20, 2019).  But it is not clear whether Capital Asset made this statement on May 23, 2023, as Plaintiff pleads later in the complaint, or on May 24, 2023, as Plaintiff pleads earlier.  *See* FAC ¶¶ 122, 20.

*Third,* Plaintiff alleges that Capital Asset used "detailed descriptions, photographs, and technical specifications" to create "misleading sales literature, falsely suggesting it owned or controlled the Centura system."  FAC ¶ 75.  Capital Asset argues that because this allegation does not specify what the sales literature said, when it was sent, or who sent it, it does not comply with the pleading requirements for fraud under Rule 9(b).  The Court agrees.  Typically, Rule 9(b) requires the party alleging fraud to plead "the who, what, when, where, and how" of the misconduct.  *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  Plaintiff must also identify what was false or misleading about the statement.  *Wiskind v. JPMorgan Chase Bank, N.A.*, No. 14-CV-04223-NC, 2015 WL 400549, at \*3 (N.D. Cal. Jan. 29, 2015) (citation omitted).  Plaintiff has done neither.

*Fourth*, the Court considers Capital Asset's December 6, 2023, statement that the Epsilon system "would be shipped from Singapore," which Plaintiff alleges "implied ownership or contractual access to the system."  FAC ¶ 78.  But again, read in conjunction with Section 5— which explicitly conditions the invoice on a prior sale to Capital Asset and "implies that Capital Asset did not own the relevant equipment at the time"—this statement cannot be considered a misrepresentation.  *See* Order at 5–6.

*Finally*, the FAC alleges that at some point after Capital Asset made the December 6, 2023, statement about shipment from Singapore, Capital Asset stated an update on "equipment release and delivery" would follow.  FAC ¶ 78.  Paragraph 99 seems to allege this statement was made on December 15, 2023, but it is not entirely clear.  *See* FAC ¶ 99.  Capital Asset argues that if the statement was indeed made on December 15, Plaintiff could not have relied on it in paying

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

for the system on December 6.  Mot. at 12.  Here again, the Court agrees that if Capital Asset made the statement after Plaintiff acted, Plaintiff could not have relied on the statement.  *See, e.g., Gavaldon*, 2019 WL 764031, at *2 (S.D. Cal. Feb. 20, 2019).

In sum, the first and fourth statements do not constitute misrepresentations.  The third group of statements, allegedly contained within the marketing materials, is not pled with enough specificity to determine whether it constitutes a misrepresentation.  And the date of the second and fifth statements are not plead with enough specificity for the Court to determine whether Plaintiff could have relied on them.  Since the "court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts," the Court DISMISSES Plaintiff's fraud claim.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).  The Court grants LEAVE TO AMEND only as to the second, third, and fifth alleged misrepresentations.

### 4.  Negligent Misrepresentation (Count IV)

Plaintiff alleges that Defendants "supplied false information . . . that [Capital Asset] had secured ownership of the Centura and Epsilon Systems and was prepared to deliver them on the timelines stated," and that they had no reasonable grounds for believing those statements to be true.  FAC ¶ 88.

In moving to dismiss, Capital Asset first argues that Plaintiff has pled neither misrepresentation nor intent. Mot. at 14–16.  The elements of a claim for negligent misrepresentation are (1) a misrepresentation; (2) of a fact by a person who has no reasonable grounds for believing it to be true; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage.  *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996); *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 792 (2013)).  The alleged misrepresentations here seem

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

14

to be the same as those underlying the fraud claim. *See* FAC ¶¶ 72–80. But as the Court has already explained, Plaintiff failed to plead that those statements were misrepresentations or that Plaintiff relied on them. *See supra* Part III.B.3. The same analysis applies here, and thus Plaintiff has failed to plead a misrepresentation.

Capital Asset further argues that the economic loss rule bars this claim. Mot. at 16–17. The economic loss rule bars tort recovery for purely economic loss arising from a breach of contract, unless the claimant can demonstrate violation of an independent duty arising in tort and a harm beyond a broken contractual promise. *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021), *certified question answered*, 17 Cal. 5th 1 (2024) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)). Capital Asset contends that the harm Plaintiff has alleged—the failure to deliver the equipment within a reasonable amount of time—does not constitute harm beyond a broken contractual promise. Mot. at 16–17.

In Opposition, Plaintiff counters that the fraudulent inducement exception to the economic loss rule should apply. In *Robinson*, the California Supreme Court held that the economic loss rule does not bar fraud claims premised on affirmative misrepresentations arising from or related to the performance of a contract. *Robinson*, 34 Cal. 4th at 989. Plaintiff argues that here, "[t]he independent fraud is the series of *pre-contractual misrepresentations*." Opp. at 8.

Capital Asset is correct: the economic loss rule applies to this claim. First, as explained above, Plaintiff has not stated a claim for misrepresentation. *See supra* Part III.B.3. Without an "intentional misrepresentation[] of fact," *Robinson* at 991, or "fraudulent concealment," *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 38 (2024), there are no grounds for applying the fraudulent inducement exception to the economic loss rule. Second, the only harms Plaintiff alleges—that Capital Asset failed to deliver the equipment or return Plaintiff's payments—are in contract. FAC ¶ 96; Opp. at 7–8. They do not constitute consequences from a potential breach that were "beyond

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
15

the reasonable contemplation of the parties" when they entered the contract. *Rattagan*, 17 Cal. 5th at 36 (citing exposure to liability for personal injuries or government disciplinary actions as consequences that would meet this standard).

Plaintiff has not pled a misrepresentation to support this claim. But even if Plaintiff had done so, the economic loss rule would bar the claim because Plaintiff has not pled a harm beyond a broken contractual promise. Therefore, this claim is DISMISSED. Since the Court has granted leave to amend as to some of the misrepresentations that would support this claim, and because the economic loss rule was not raised in the prior briefing and Plaintiff could, theoretically, plead additional facts that describe a harm beyond a failure to deliver, the Court grants LEAVE TO AMEND. *Lopez v. Smith*, 203 F.3d at 1127.

### 5. Intentional Misrepresentation (Count V)

Plaintiff alleges that Capital Asset "knowingly made numerous false representations of material fact" to Epicrew, with the intent to induce reliance. FAC ¶¶ 98, 103. According to Plaintiff, these statements include that the Centura system "will be released soon," that "[o]ur logistics team will contact you . . . to begin the tool removal process," that the Epsilon system "would be shipped from Singapore," and that an update on "equipment release and delivery" was forthcoming. *Id.* ¶ 99. Plaintiff also alleges that the marketing materials "falsely implied that [Capital Asset] owned or controlled the system." *Id.* ¶ 101.

In moving to dismiss, Capital Asset contends that this claim should be dismissed for the same reasons as Plaintiff's fraud claim. Mot. at 8–14. The Court agrees. *See supra* Part III.B.3. As with the fraud claim, Plaintiff's claim for intentional misrepresentation is DISMISSED, and like the fraud claim, LEAVE TO AMEND is granted only with respect to the alleged statements about the tool removal process and delivery update, as well as the statements allegedly made in the marketing materials. *See supra* Part III.B.3.

**6. Fraudulent Concealment (Count VI)**

In Plaintiff's original complaint, Plaintiff alleged that Capital Asset fraudulently concealed "the fact that it did not own the [equipment]." Compl. ¶ 85. The amended complaint now alleges that Capital Asset "concealed from [Plaintiff] that it did not own, *possess, or have the ability to acquire* the Centura and Epsilon systems at the time it solicited and accepted payment from [Plaintiff]." FAC ¶ 109 (emphasis added). Capital Asset moves to dismiss, arguing that neither their statements (e.g., that the Centura system "would be released soon" or that the Epsilon system "would be shipped from Singapore") nor their failure to provide status updates constitute fraudulent concealment, in large part because—as the Court found in its previous Order—the Epicrew Contracts revealed that a third party's prior sale of the equipment was necessary to complete the transaction. Mot. at 18.

The elements of fraudulent concealment include "(1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage." *Burch v. CertainTeed Corp.*, 34 Cal. App. 5th 341, 348 (2019). Here, Capital Asset did not conceal or suppress a material fact. Section 5 of the Epicrew Contracts states that the "Equipment is offered to Buyer based on its prior sale to [Capital Asset]. Should such prior sale not occur, this invoice shall be null and void." Epicrew Contracts at 1. In its previous Order, the Court found that "the Epicrew Contracts themselves reveal Capital Asset did not own the equipment." Order at 5. That leads to the further conclusion that Capital Asset did not possess the equipment and indeed may never be able to acquire it. As the Court previously explained, the language in Section 5 makes it clear that the sale was contingent: Capital

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
17

Asset had to purchase the equipment from a third party before selling it to Plaintiff.  Order at 5–6.  That contingency implies that Capital Asset may never be able to acquire the equipment.  *Id*.

Though there is a "strong presumption in favor of granting leave to amend," *Smith*, 262 F. Supp. 3d at 956, courts can dismiss without leave to amend if "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiencies."  *Swartz v. KPMG* LLP, 476 F.3d 756, 761 (9th Cir. 2007).  Here, there are no facts that could overcome the language in the Epicrew Contracts, which clearly disclosed that Capital Asset did not own the equipment—and thus did not control it and may never be able to acquire it.  As a result, this claim is DISMISSED WITHOUT LEAVE TO AMEND.

### 7.  Promissory Fraud (Count VII)

Plaintiff alleges that when Capital Asset "made express promises to Epicrew that they would sell and deliver [the equipment] in exchange for full advance payment," they "did not intend to perform them."  FAC ¶¶ 120–21.  The Court previously found this allegation conclusory.  Order at 6.  Plaintiff has since added facts in an attempt to support this allegation, including that Capital Asset's agent emailed stating "we will contact you in a few days to begin the tool removal process"; that Capital Asset entered into a brokerage agreement with a third party but later "refused to forward [Plaintiff's] payment" to the third party; and that Capital Asset stated the Epsilon system "would be shipped from Singapore."  FAC ¶¶ 122–24.  Capital Asset argues that this claim should be dismissed because the allegations do not support the conclusion that Capital Asset never intended to perform.  Mot. at 21.

The Court agrees with Defendant.  To state a claim for promissory fraud, "a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation."  *Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-CV-912 IEGBLM, 2007 WL 2206946, at *6 (S.D. Cal. July 27, 2007).  Here, Plaintiff has alleged three

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
18

false promises: that Capital Asset would contact Plaintiff in a few days to begin tool removal, that Capital Asset entered into a brokerage agreement, and that the Epsilon system would be shipped from Singapore. FAC ¶¶ 122–24. Plaintiff then alleges that Capital Asset did not perform and, based on that fact, concludes that Capital Asset never intended to perform. But since "[m]ere nonperformance of a promise does not suffice to show the falsity of the promise," this is not enough to state a claim. *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015). Thus, the Court DISMISSES Plaintiff's claim for promissory fraud. Though the Court is skeptical that Plaintiff will be able to produce, on the third attempt, any additional facts to support this claim, the Court grants LEAVE TO AMEND because of the "strong presumption" in favor of doing so. *Smith*, 262 F. Supp. 3d at 956.

### 8. UCL (Count VIII)

California's UCL prohibits unfair competition, defined as "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiff raises claims under all three prongs, and Capital Asset moves to dismiss. FAC ¶¶ 129–34; Mot. at 21–24.

#### a. Prohibition Against Fraudulent Business Practices

A business practice is "fraudulent" under the UCL if "members of the public are likely to be deceived." *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (Cal. 1983) ("To state a cause of action under these statutes for injunctive relief, it is necessary only to show that 'members of the public are likely to be deceived.'") (quoting *Chern v. Bank of Am.*, 15 Cal. 3d 866, 876 (Cal. 1976)).

Plaintiff's claim under the fraudulent prong fails for the same reason that the other fraud-based claims fail: Plaintiff has not alleged sufficient facts to show a reasonable person would be misled by Capital Asset's various statements. *See supra* Part III.B.3.

#### b. Prohibition Against Unfair Business Practices

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
19

A plaintiff may state a claim for an unfair business practice in one of two ways. She may show that the practice "threatens an incipient violation of an antitrust law or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (Cal. 1999). Or she may base her unfairness claim on public policy. If she chooses this second avenue, "the action must be 'tethered' to specific constitutional, statutory, or regulatory provisions." *Id*.

Here, Plaintiff has not offered any facts to show that Capital Asset violated antitrust law or policy. *See* FAC ¶ 131. Instead, Plaintiff seems to allege a simple violation of "established public policy," claiming that Capital Asset's practices are "immoral, unethical, oppressive, and unscrupulous." FAC ¶ 133. But Plaintiff has not tethered the claim to any constitutional, statutory, or regulatory provisions. *Id*. As a result, Plaintiff has not stated a claim under this prong.

### c. Prohibition Against Unlawful Business Practices

A business practice that violates any law may be redressed under the unlawful acts and practices prong. *See People v. E.W.A.P. Inc.*, 165 Cal. Rptr. 73, 75 (Cal. Ct. App. 1980) (stating that "the purpose of the amendment was to 'extend the meaning of unfair competition to anything that can properly be called a business practice and that at the same time is forbidden by law'") (quoting *Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 112–13 (Cal. 1972)); *see also Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 383 (Cal. 1992).

Here, Plaintiff briefly mentions the "unlawful" prong in the FAC, alleging that Capital Asset "engaged in unlawful, unfair, and fraudulent business practices." FAC ¶ 131. But Plaintiff does not cite to any specific law and then drops the mention of "unlawful" in the following paragraph. *Id*. ¶¶ 131, 134. The Opposition adds little, simply stating that the conduct "violates

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
20

other laws, most notably the common law of fraud." Opp. at 9. But as the Court has already found, Plaintiff has not stated a claim for fraud. *See supra* Part III.B.3. Without any predicate unlawful act, Plaintiff's claim under this prong of the UCL fails.

*** 

In sum, the Court finds Plaintiff has failed to plead facts to state a plausible claim of relief for UCL violations. These claims are DISMISSED. Because they rely in part on Plaintiff's claim for fraud, for which the Court has granted leave to amend, the Court grants LEAVE TO AMEND as to the UCL claims, as well.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss under Rule 12(b)(6) as follows:

1. All claims as to Individual Defendants Jacob, Gill, and Ruiz are DISMISSED WITH LEAVE TO AMEND.

2. The fraud claim (Count III) against Capital Asset is DISMISSED WITH LEAVE TO AMEND granted only as to the second, third, and fifth alleged misrepresentations.

3. The negligent misrepresentation claim (Count IV) against Capital Asset is DISMISSED WITH LEAVE TO AMEND.

4. The intentional misrepresentation claim (Count V) is DISMISSED WITH LEAVE TO AMEND granted only as to the alleged statements about the tool removal process, delivery update, and marketing materials.

5. The fraudulent concealment claim (Count VI) is DISMISSED WITHOUT LEAVE TO AMEND.

6. The promissory fraud claim (Count VII) is DISMISSED WITH LEAVE TO

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

AMEND.

7.  The UCL claim (Count VIII) is DISMISSED WITH LEAVE TO AMEND.

The Court DENIES Defendants' motion to dismiss the claim for breach of implied covenant of good faith and fair dealing (Count II).  All dismissals in this order are without prejudice.  If Plaintiff intends to file an amended complaint, Plaintiff shall do so within **twenty-one (21) days of this order.**

**IT IS SO ORDERED.**

Dated: February 6, 2026

EDWARD J. DAVILA
United States District Judge

Case No.: 24-cv-03676-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
22