United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

EPICREW CORPORATION,

Plaintiff,

v.

CAPITAL ASSET EXCHANGE AND TRADING, LLC, et al.,

Defendants.

Case No. 5:24-cv-03676-EJD

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: ECF No. 73

Plaintiff Epicrew Corporation ("Epicrew") brings this action against Defendants Capital Asset Exchange and Trading, LLC ("Capital Asset"), Ryan Jacob, Austin Gill, and David Ruiz, seeking damages for Capital Asset's alleged failure to deliver semiconductor equipment that Epicrew had purchased. Second Am. Compl. ("SAC"), ECF No. 71. Before the Court is Defendants' motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Mot., ECF No. 73. Plaintiff filed an Opposition, and Defendants filed a Reply. Opp., ECF No. 77; Reply, ECF No. 78. Having reviewed the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b). For the reasons explained below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss under Rule 12(b)(6).

## I. BACKGROUND

### A. Parties

Plaintiff is a corporation headquartered in Omura, Nagasaki, Japan, that specializes in semiconductor refurbishment services. SAC ¶ 2.

Defendant Capital Asset is a company with its principal place of business in Santa Clara, California. *Id.* ¶ 3. Defendant Ryan Jacob is Capital Asset's Chief Executive Officer, Defendant Austin Gill is the Chief Operating Officer, and Defendant David Ruiz is the Managing Director. *Id.* ¶¶ 4–6. Defendants Jacob, Gill, and Ruiz ("the Individual Defendants") all reside outside of California, but Plaintiff alleges on information and belief that they regularly conduct business in California on behalf of Capital Asset. *Id.* ¶¶ 4–6.

**B. Factual Background**

Plaintiff alleges that in early 2023, Defendant Capital Asset "targeted" Plaintiff as a "likely buyer" of semiconductor equipment. *Id.* ¶ 15. On May 22, 2023, Plaintiff requested that Capital Asset provide an image and serial number for Applied Materials' Centura system ("the Centura system"), which Plaintiff was interested in purchasing. *Id.* ¶ 17. Capital Asset responded, stating that the image and serial number were not available because the system was "still in operation." *Id.* On May 23, 2023, Plaintiff expressed continued interest in the Centura system. *Id.* ¶ 18. Later that day, Capital Asset responded, writing, "Thank you for reaching out on the Centura EPI that we have just secured. We are asking $975k for the unit and are in talk[s] with two others." *Id.* ¶ 19. The next day, Defendant Capital Asset emailed again, writing, "The tool has an immediate release date, but it typically take[s] around 3-4 weeks on the supplier side to arrange removal." *Id.* ¶ 21. Plaintiff alleges that on May 24, 2023, Plaintiff signed and submitted the invoice; the next day, Plaintiff wired $965,000 to Capital Asset.[1] *Id.* ¶¶ 25, 27.

By November, Plaintiff still had not received the Centura system. *Id.* ¶ 30. During November and December 2023, Plaintiff emailed back and forth with Defendants Capital Asset and Gill regarding when delivery would occur. *Id.* ¶¶ 33–40. On November 12, 2023, Plaintiff emailed Capital Asset to see if delivery was forthcoming, but Capital Asset did not respond. *Id.* ¶ 30. On November 27, Plaintiff sent an email to Capital Asset requesting to cancel the transaction and receive a refund. Defendant Gill responded the next day, declining to cancel the transaction

[1] Defendants dispute that Plaintiff signed the invoice on May 24. *See infra* Part II.B.2.b.

United States District Court
Northern District of California

but promising, "I'll personally see if I can assist in the expediting of remaining steps." *Id.* ¶ 32. On December 19, 2023, Defendant Gill again responded to Plaintiff's inquiries, stating, "we can expect the equipment to be crated and shipped in the second week of January." *Id.* The Centura system never arrived. *Id.* On information and belief, Plaintiff alleges that Capital Asset never intended to complete delivery and instead misappropriated the $965,000 "to cover internal business expenses, including executive compensation for Defendants Jacob, Gill, and Ruiz." *Id.* ¶ 42.

Plaintiff alleges that a similar series of events occurred when it tried to purchase an ASM Epsilon EPI system ("the Epsilon system"). According to Plaintiff, on November 20, 2023, Capital Asset sent an invoice to Plaintiff offering to sell the Epsilon system for $125,000. *Id.* ¶ 46. Plaintiff responded, asking for the equipment's shipping origin. *Id.* ¶ 47. When Capital Asset replied saying that the Epsilon system would be shipped from Singapore, Plaintiff wired $125,000 to Capital Asset. *Id.* ¶¶ 49–50. Over the following month, Plaintiff and Defendants Capital Asset and Gill again emailed back and forth as Plaintiff tried to secure delivery of the Epsilon system. *Id.* ¶¶ 51–58. Plaintiff alleges Capital Asset never delivered any of the equipment ordered, nor has Capital Asset provided a refund. *Id.* ¶¶ 58–60.

Plaintiff alleges claims for breaches of contract and of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, intentional misrepresentation, false promise, and violation of California's Unfair Competition Law ("UCL"), and seeks declaratory relief. Capital Asset moves to dismiss all claims except those for breach of contract and declaratory relief.

### C. Procedural History

In June 2024, Plaintiff filed suit against Capital Asset for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, intentional misrepresentation, fraudulent concealment, false promise, violation of the UCL, and declaratory relief. Compl., ECF No. 1. Capital Asset moved to dismiss that complaint for failure to state a

claim. ECF No. 13. The Court held that Plaintiff could proceed with two claims: breach of contract based on Capital Asset's alleged failure to timely deliver the promised equipment, and its claim for declaratory relief stating the two contracts are null and void. 2025 Order, ECF No. 47 at 7. The Court dismissed the remaining seven claims with leave to amend. *Id.*

Plaintiff filed an amended complaint. First Am. Compl. ("FAC"), ECF No. 51. The FAC was substantially similar to the initial complaint, but it added Defendants Jacob, Gill, and Ruiz, alleging they were liable under an alter ego theory. *Id*. Capital Asset again moved to dismiss all claims, excluding the breach of contract and declaratory relief claims, for failure to state a claim under Rule 12(b)(6). ECF No. 53. The Court found that Plaintiff failed to state a claim for alter ego liability. 2026 Order, ECF No. 67 at 6–7. The Court also found that none of the five alleged misrepresentations could support a claim of fraud but granted leave to amend three of them. *Id.* at 12–14. The Court also dismissed the claims for negligent and intentional misrepresentation, fraudulent concealment, promissory fraud, and violation of the UCL, but allowed the claim for breach of the implied covenant of good faith and fair dealing to proceed. *Id.* at 21–22.

## II. INCORPORATION BY REFERENCE

Before deciding the motion to dismiss, the Court must set the scope of the record. In general, a court may not consider material beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018). The only exceptions to this rule are documents that are the subject of judicial notice, appended to the complaint, or incorporated by reference. *Id.*

The Court previously ruled that invoices for the Centura and Epsilon systems were incorporated by reference. 2026 Order at 4. The Motion cites those same invoices. *See* Epicrew Contracts, ECF Nos. 74-1, 74-2. These documents were not appended to the complaint. *See* SAC. But they are incorporated by reference because they "form the basis of" Plaintiff's contract claims: Plaintiff claims that Defendants breached these contracts. *Khoja*, 899 F.3d at 1002. Consequently, the Court will consider the contracts.

## III. MOTION TO DISMISS

### A. Legal Standard

#### 1. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). When deciding whether to grant a motion to dismiss under Rule 12(b)(6), the court must generally accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Plaintiffs need not offer detailed factual allegations to meet this standard, but they are required to offer "sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must construe the alleged facts and inferences in the light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) ("[The court] must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party."). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

#### 2. Rule 9(b)

Additionally, claims sounding in fraud must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102–03 (9th Cir. 2003). Under Rule 9(b), a party "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Typically, Rule 9(b) requires the party alleging fraud to plead "the who, what, when, where, and how" of the misconduct. *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

### B. Discussion

#### 1. All Causes of Action as to Individual Defendants

Plaintiff's FAC added Defendants Jacob, Gill, and Ruiz as defendants. Plaintiff alleged that the Individual Defendants "intentionally undercapitalized CAE to perpetrate fraud while

avoiding personal liability to creditors such as Epicrew," "misused corporate funds for their own benefit," and "authorized, directed, and/or participated in the fraudulent conduct." FAC ¶¶ 45, 82. The Court found that Plaintiff had failed to plead that the Individual Defendants were liable through alter ego or direct liability and dismissed all claims against those defendants. 2026 Order at 7.

The SAC makes the same allegations against the Individual Defendants, SAC ¶¶ 63–65, but adds four statements made by Defendant Gill after Plaintiff purchased the Centura system. *Id.* ¶¶ 32, 35, 40, 55.

**a. Alter Ego Theory of Liability**

Plaintiff argues that the Individual Defendants should be held liable as alter egos of Capital Asset. The SAC adds the allegation that on December 19, 2023, Defendant Gill emailed Plaintiff stating, "My main role is managing the operations of our 350 employee firm . . . I'll be online for another few hours ensuring our business continues, and the other 500 active shipments reach their destinations successfully and compliantly, by ensuring the various departments and employees involved are doing what is required . . ." SAC ¶ 55. In moving to dismiss, Defendants contend that Gill's management role alone does not render him an alter ego of Capital Asset. Mot. at 8.

Alter ego liability holds a person liable for the actions of their sham corporation. *Leek v. Cooper*, 194 Cal. App. 4th 399, 417–18 (2011). To plead alter ego liability, the plaintiff must show (1) that there is such a "unity of interest" between the corporation and individual that they are not "separate personalities" and (2) that treating the conduct at issue as the corporation's alone would lead to an "inequitable result." *Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 300 (1985).

Plaintiff has pled neither of these two elements. The mere fact that Defendant Gill managed operations for a 350-person firm does not establish a unity of interest. Indeed, even "controlling a corporation . . . does not give rise to alter ego liability; otherwise, every company would be an alter ego of its CEO and managers." *Smith v. Lanza*, No. 21-CV-08785-JST, 2022

WL 20243472, at *2 (N.D. Cal. Apr. 18, 2022); *see also Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("The mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law."). And Plaintiff does not plead any additional facts that would establish a unity of interest for Defendants Jacob and Ruiz. Consequently, the Court again finds that Plaintiff has failed to plead that Defendants Jacob, Gill, and Ruiz should be liable as alter egos.

**b. Direct Liability as Corporate Officers**

Corporate officers are personally liable for torts they commit or direct. *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1381–82 (2000). First, Defendants argue that the SAC does not allege any facts indicating that Defendants Jacob or Ruiz are personally liable for the allegedly fraudulent conduct. Mot. at 8–9. The Court agrees. Plaintiff contends that "it strains credulity to suggest that a fraudulent scheme . . . was executed without the knowledge and direction of its CEO and Managing Director," but as the Court noted in its previous order, Plaintiff must at least state the facts on which that belief is founded. 2026 Order at 6–7 (citing *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 540 (9th Cir. 1989)). Plaintiff has added no such facts to the SAC, so the Court finds that Defendants Jacob and Ruiz are not personally liable for any alleged fraud.

Plaintiff did, however, plead additional facts in an attempt to establish Defendant Gill's liability for the alleged fraud. Three of those statements were regarding the Centura system. On November 28, 2023, Defendant Gill emailed Epicrew, stating, "I oversee [Capital Asset]'s global operations. . . . I see that our team is working diligently to push all parties involved to complete removal and make the equipment ready for export. I'll personally see if I can assist in the expediting of remaining steps." SAC ¶ 32. On December 15, 2023, Defendant Gill emailed saying that he would "meet with the team today to get a proper update." SAC ¶ 35. On December 19, 2023, Defendant Gill wrote, "I've been informed that we can expect the equipment to be crated and shipped in the second week of January." SAC ¶ 40. On the same day, Defendant Gill

also responded to Plaintiff's request for an update on the Epsilon system, stating, "My main role is managing the operations of our 350 employee firm . . . I'll be online for another few hours ensuring our business continues, and the other 500 active shipments reach their destinations successfully and compliantly, by ensuring the various departments and employees involved are doing what is required . . ." SAC ¶ 55.

Defendants contend that the timing of these statements could not have induced Plaintiff's purchase of either the Centura or the Epsilon system. Mot. at 8–9. Defendant Gill made the statements regarding the Centura system on November 28, December 15, and December 19, 2023, more than six months after Plaintiff purchased the Centura system. SAC ¶¶ 32, 35, 40. And Defendant Gill made the Epsilon statement on December 19, thirteen days after Plaintiff purchased the Epsilon. SAC ¶ 55. Thus, the Centura statements could not have induced Plaintiff to buy the Centura system, and the Epsilon statement could not have induced Plaintiff to buy the Epsilon system.

Resisting this conclusion, Plaintiff insists that the statements were part of "a continuing fraud" intended to "extend and conceal the original fraud by preventing Epicrew from discovering the truth and pursuing its rights." Opp. at 6. Essentially, the argument is that the statements induced Plaintiff to continue relying on the two contracts. But in a fraud claim, the continuation of an alleged fraud alone does not constitute damages. A plaintiff "cannot base its fraudulent inducement allegations on promissory fraud that occurred after the parties had already entered into the . . . agreement . . . because it does not allege that . . . the statements induced anything other than continued performance on the agreement." *See Juice Roll-Upz, Inc. v. Liquid Guys Distributions, Inc.*, No. SACV 17-2052-JVS, 2018 WL 6118606, at *5 n.1 (C.D. Cal. Aug. 2, 2018). Consequently, Plaintiff has failed to plead that Defendant Gill is personally liable for any alleged fraud arising from the Centura or Epsilon transactions.

***

In sum, Plaintiff has not adequately pled that any of the Individual Defendants are liable

either under a theory of alter ego or direct liability. Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 701 (9th Cir. 2011). But here, Plaintiff has had multiple opportunities to name the Individual Defendants and to allege facts to support liability, but Plaintiff has not done so. Consequently, the Court DISMISSES all claims against the Individual Defendants WITHOUT LEAVE to amend. With the Individual Defendants dismissed, the Court will consider the rest of the motion only with respect to Capital Asset.

**2. Fraud and Intentional Misrepresentation (Counts III and V)**

Plaintiff alleges that Capital Asset made misrepresentations that led Plaintiff to believe Defendants were in control of the Centura and Epsilon systems. SAC ¶¶ 91–98. As to the Centura system, Plaintiff claims that three statements—that Capital Asset had "just secured" the Centura system, that "the tool has an immediate release date, but it typically takes around 3–4 weeks on the supplier side to arrange removal," and "[y]our purchase has been approved . . . our logistics team will be reaching out to you . . . to start the tool removal process"—led Plaintiff to believe that Capital Asset controlled the Centura system. *Id.* ¶¶ 19, 21, 25. Plaintiff also claims the Centura sales literature was "misleading." *Id.* ¶ 95. As to the Epsilon system, Plaintiff alleges that the statements that "[Capital Asset] would like to finalize the removal and preparation for shipment" but would "need a remittance receipt," the equipment "is being shipped to Epicrew from Singapore," and "we can expect the equipment to be crated and shipped in the second week of January" led Plaintiff to believe that Capital Asset controlled the system. *Id.* ¶¶ 48–49, 40.

The elements of fraud are (1) a misrepresentation, (2) knowledge of falsity, (3) an intent to defraud, (4) justifiable reliance, and (5) resulting damages. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). The Court will consider whether Plaintiff has pled the elements of fraud for each of the statements.

**a. "Just Secured" Statement**

Plaintiff alleges that on May 23, 2023, Capital Asset stated it had "just secured" the

Centura system. SAC ¶ 91. The SAC alleges that this statement led Plaintiff to believe that Capital Asset owned the Centura system, which induced Plaintiff to sign the purchase invoice and wire money to Capital Asset. *Id.* ¶¶ 25, 94.

**i. Misrepresentation**

First, the Court considers whether Plaintiff has alleged that the "just secured" statement was false. Capital Asset contends that Plaintiff has not done so. Mot. at 10.

A claim of fraud made on information and belief must be accompanied by a statement of facts on which that belief is founded. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010). Here, Plaintiff has done just that, pleading that for months after the sale, Capital Asset failed to deliver the equipment or even offer an estimated delivery date. SAC ¶¶ 30–40. From these facts, Plaintiff infers that Capital Asset had not secured the equipment when this statement was made. The Court is required to draw all reasonable inferences in favor of Plaintiff, so the Court concludes that Plaintiff has adequately pled a misrepresentation. *Retail Prop. Trust*, 768 F.3d at 945 (9th Cir. 2014).

**ii. Knowledge of Falsity and Intent to Defraud**

Second, the Court considers whether Plaintiff has adequately pled both knowledge of falsity and an intent to defraud. On information and belief, Plaintiff alleges that the solicitation of the purchase was a "calculated effort to extract payment with no corresponding intent to perform." *Id.* ¶ 44. Here again, Defendant contends Plaintiff has not pled facts on which this belief is based. Mot. at 14–15. But Plaintiff alleges that Capital Asset required full advance payment, SAC ¶ 27, and that other companies have sued Capital Asset for the same or similar alleged schemes, *id.* ¶¶ 67–69. From this, Plaintiff infers that Capital Asset knew it had not secured the Centura system but intentionally led Plaintiff to believe that it had. The Court finds that Plaintiff has pled sufficient facts to support this inference and consequently concludes that Plaintiff has pled knowledge of falsity and intent to defraud.

**iii. Reliance**

Third, the Court considers whether Plaintiff has adequately pled justifiable reliance. In moving to dismiss, Capital Asset argues that Section 5 of the Epicrew Contracts—which states "[a]ll Equipment is offered to Buyer based on its prior sale to [Capital Asset]"—makes it clear that when Capital Asset made the "just secured" statement, it did not yet own the Centura System. In Opposition, Plaintiff posits that Section 5 should not apply because "[a] party cannot immunize itself from liability for intentional misrepresentation through a contractual provision." Opp. at 8 (citing *Manderville v. PCG&S Group, Inc.*, 146 Cal. App. 4th 1486, 1500 (2007)).

California Civil Code Section 1668 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud . . . are against the policy of the law." Cal. Civ. Code § 1668. A party to a contract cannot relieve herself of liability simply by placing an exculpatory clause into the contract. *Manderville*, 146 Cal. App. 4th at 1501. But here, Section 5 does not aim to waive liability. Rather, Section 5 merely "implied the 'possibility . . . that Capital Asset did not own the relevant equipment at the time.'" 2026 Order at 12 (citing 2025 Order at 5–6); *but cf. Simmons v. Ratterree Land Co.*, 217 Cal. 201, 203 (1932) (finding that a provision that the buyer did not rely on extra-contractual representations did not exempt seller from liability for misrepresentations that induced the buyer to contract); *Smith v. Rickards*, 149 Cal. App. 2d 648, 653 (1957) (similar). Consequently, the Section 5 statement is not against public policy.

The Court thus reads the "just secured" statement in light of Section 5. Section 5 states that if Capital Asset was not able to purchase the equipment from a manufacturer, then any further contract to sell that equipment would be null and void. Epicrew Contracts at 1. When Capital Asset's agent emailed Plaintiff stating that Capital Asset had "just secured" the Centura system, Plaintiff understood that to mean that Capital Asset had purchased the equipment and—having satisfied the terms of Section 5—was able to sell the equipment to Plaintiff. Opp. at 7–8.

Failing that, Capital Asset offers one more reason to dismiss the "just secured" statement: the SAC has deleted a statement that may undermine Plaintiff's claim. Mot. at 10. The FAC

states that on May 23, 2023, Capital Asset wrote, "[t]his equipment will be released soon, but it usually takes 3–4 weeks for the supplier to arrange removal. If Epicrew signs before the other offer, our bid of $950K will be accepted. If our second signs, the first buyer will receive the equipment." Mot. at 10 (citing FAC ¶ 18). The Court previously found that "the conditional nature of that . . . sentence shows that Capital Asset had not yet secured the equipment." 2026 Order at 12.

Defendant asks the Court to consider the deleted statement in its analysis of the SAC. But the Court may not consider that statement in deciding on the motion to dismiss. The Ninth Circuit has held that "there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations." *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007); *see also Kanaan v. Yaqub*, No. 21-CV-09591-BLF, 2022 WL 3357834, at *4 (N.D. Cal. Aug. 15, 2022) (collecting cases). "Unless there is a showing that the party acted in bad faith" through a Rule 11 motion, "inconsistent allegations are simply not a basis for striking the pleading." *PAE*, 514 F.3d at 860. The Court may not consider the omitted statement in its analysis. And without that damaging statement, Plaintiff has adequately pled that Capital Asset had "just secured" the Centura equipment and was able to sell it to Plaintiff. Capital Asset made that statement on May 23, 2023, the day before Plaintiff signed the Centura invoice and two days before Plaintiff paid. SAC ¶ 19. Consequently, the Court concludes that Plaintiff has adequately pled justifiable reliance.

**iv. Damages**

Finally, the Court considers whether Plaintiff has adequately pled that the alleged fraud led to the alleged injury. Plaintiff alleges that Capital Asset did not own the equipment and thus did not deliver it, and that as a result, Plaintiff lost not only the money spent on the equipment but also the opportunity to pursue other suppliers. SAC ¶¶ 100–01. In moving to dismiss, Capital Asset contends that "even assuming the truth of the SAC, Epicrew would have suffered its alleged injury—*i.e.,* its failure to receive the equipment—regardless of whether CAET 'owned' or

'secured' it." Mot. at 15–16. As the argument goes, even if Capital Asset had owned the equipment, the shipment might have been delayed and Plaintiff would have suffered the same harm.

Even where a Plaintiff states a claim for all of the other elements of fraud, "no liability attaches if the damages sustained were otherwise inevitable or due to unrelated causes." *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1064 (2012). Take, for instance, a case where two plaintiffs defaulted on their mortgage. The plaintiffs sued the lender for fraud, alleging the lender failed to disclose a securitization agreement. The court found that even if that were true, the plaintiffs' damages arose from the default, not from the alleged non-disclosure. *Sapien v. Wells Fargo Bank, N.A.*, No. EDCV-162602-JGB-KKX, 2017 WL 8220419, at *4 (C.D. Cal. Apr. 13, 2017).

Capital Asset contends that the situation here is similar, but the Court is not persuaded. In that case, the pleadings showed that the plaintiffs had defaulted on their mortgage, causing the bank to foreclose on their home. Here, on the other hand, there are no facts indicating that Plaintiff necessarily "would have suffered the alleged damage even in the absence of fraudulent inducement." *Beckwith*, 205 Cal. App. 4th at 1064. Capital Asset has merely presented a hypothetical: that Capital Asset could have delayed delivery for some other reason, even if it had owned the equipment. That is not enough to show the damages were "otherwise inevitable." *Id*. The Court concludes that Plaintiff has adequately pled damages.

***

In sum, Plaintiff has stated a claim for fraud and intentional misrepresentation arising from the "just secured" statement.

**b. "Immediate Release Date" Statement**

Plaintiff alleges that on May 24, 2023, Capital Asset employee David Sardi sent an email stating, "[t]he tool has an immediate release date, but it typically take[s] around 3–4 weeks on the supplier side to arrange removal." SAC ¶ 21. Plaintiff claims this statement indicated that Capital Asset "had secured rights to the equipment" and thus fraudulently induced Plaintiff to buy the

Centura system. *Id.*

Capital Asset moves to dismiss on two grounds. First, Capital Asset contends that the second half of the email undermines the meaning of the challenged statement. Mot. at 11. But that portion of the email—which implied that Capital Asset did not yet own the Centura system—only appears in the FAC. *See* 2026 Order at 12. But the Court must rely only on the SAC in its analysis. *See supra* Part III.B.2.a.iii. The SAC states that Mr. Sardi wrote, "We will accept your bid of $950K if signed before another offer. If you sign second, the first buyer will be given the tool. . . If you are [the first], I'll get the tool reserved for you." SAC ¶ 21. This sentence merely states that if Plaintiff signed first, Capital Asset would accept Plaintiff's bid. It does not imply that Capital Asset owned the equipment.

Second, Capital Asset argues that if Mr. Sardi made the statement after Plaintiff executed the order, Plaintiff could not have relied on the statement in executing the order. Mot. at 11; *see also* 2026 Order at 11 (citing *Gavaldon v. StanChart Sec. Int'l, Inc.,* No. 16-CV-590-LAB (MDD), 2019 WL 764031, at *2 (S.D. Cal. Feb. 20, 2019)). Plaintiff pleads that they received the email on May 24, 2023, and signed and submitted the invoice on the same day. SAC ¶¶ 21, 25. But the Invoice Order for the Centura system, attached as an exhibit to Defendants' motion to dismiss, is signed and dated May 23, 2023. Frimel Decl. Ex. A., ECF No. 74-1 at 3. While the Court accepts factual allegations in a complaint as true, it "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g,* 265 F.3d 1187 (9th Cir. 2001). Consequently, the Court concludes that Plaintiff signed the contract the day before Capital Asset made the "immediate release date" statement and could not have relied on that statement in entering into the contract.

**c. "Your Purchase Has Been Approved" Statement**

Plaintiff alleges that on May 24, 2023, Capital Asset confirmed receipt of the signed invoice, stating, "Your purchase has been approved. We will need the wire transfer before the end

of the week. Our standard term are payment with-in five days from the signature, the wire instructions and term are on your contract. Our logistics team will be reaching out to you within the next few days to start the tools removal process." SAC ¶ 25. Plaintiff claims that this statement induced them to wire $965,000 to Capital Asset. *Id.* ¶ 28.

In its most recent order, the Court noted that if Capital Asset made this statement on May 24, 2023, then Plaintiff could not have relied on this statement in choosing to sign the invoice. 2026 Order at 12–13. The SAC clarifies that Capital Asset made this statement on May 24, after Capital Asset had signed the invoice. SAC ¶ 25. Consequently, Plaintiff could not have relied on this statement in signing the invoice. *Gavaldon*, 2019 WL 764031, at *2.

**d. Sales Literature**

Plaintiff alleges that Capital Asset used "detailed descriptions, photographs, and technical specifications" to create "misleading sales literature." SAC ¶ 95. Plaintiff claims that through this literature, Capital Asset "falsely suggest[ed] it owed or controlled the Centura system." *Id.*

In its most recent order, the Court found that Plaintiff did not plead "the who, what, when, where, and how" of the misconduct, nor did Plaintiff identify what was false or misleading about the statement. 2026 Order at 13 (citing *Vess*, 317 F.3d at 1106). As a result, the Court found that these allegations do not meet the pleading requirements for fraud under Rule 9(b). *Id*. The SAC does not address these deficiencies, so the Court again finds that the sales literature cannot form the basis of Plaintiff's fraud claim.

**e. "Would Like to Finalize the Removal" Statement**

On December 5, 2023, the SAC alleges that Plaintiff notified Capital Asset of its intent to purchase the Epsilon system. SAC ¶ 47. Plaintiff alleges that on the same day, Capital Asset sent an email to Epicrew stating, "we will ensure we do everything possible to move forward quickly. We would like to finalize removal and shipment by the end of the week, but in order to do so we need a remittance receipt." *Id.* ¶ 48. Plaintiff alleges that this statement "falsely suggest[ed] that [Capital Asset] had already secured the Epsilon equipment such that removal could be

accomplished by the end of the week." *Id.* ¶ 121(d).

Capital Asset contends that since Plaintiff signed the Epsilon invoice on November 30, 2023—five days before Capital Asset made the challenged statement—Plaintiff could not have relied on the statement in signing the invoice. Reply at 8. The Court finds this argument persuasive. The Invoice Order for the Epsilon system, attached as an exhibit to Defendants' motion to dismiss, is signed and dated November 30, 2023. Frimel Decl. Ex. B, ECF No. 74-2 at 3. The Court "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell*, 266 F.3d at 988. The Court accepts as true the fact that Plaintiff signed the Epsilon invoice on November 30. And the Court finds that in so doing, Plaintiff could not have relied on a statement made on December 5.

**f. "Singapore" Statement**

Plaintiff alleges that on December 6, 2023, Capital Asset sent an email stating "The equipment is being shipped to Epicrew from Singapore. We can provide a precise address for pickup upon receipt of payment." SAC ¶ 49.

The Court previously dismissed the first sentence of this statement, regarding shipment from Singapore, without leave to amend. 2026 Order at 14. Plaintiff nonetheless amended that sentence in the SAC. Having not granted leave to amend, the Court declines to consider the amended allegation.

The second sentence of the statement, offering a precise address for pickup, is alleged for the first time in the SAC. But this sentence was also made after Capital Asset signed the purchase invoice. *See supra* Part III.B.2.e. Consequently, Plaintiff could not have relied on this statement in entering into the contract.

**g. "Shipped in the Second Week of January" Statement**

Finally, Plaintiff alleges that on December 19, 2023, Defendant Gill stated that he had "been informed that we can expect the equipment to be crated and shipped the second week of January." SAC ¶ 41. Plaintiff claims that Defendant Gill made this statement "to deter Epicrew

from pursuing legal action while [Capital Asset] continued to hold its funds." Opp. at 9.

But as with the other two statements about the Epsilon equipment, *see supra* Parts III.B.2.e–f, Defendant Gill allegedly made this statement after November 30, 2023, when Plaintiff signed the invoice. Consequently, Plaintiff could not have relied on this statement in entering into the contract with Capital Asset.

***

In sum, the Court finds that the statements analyzed in Parts III.B.2.b–g, *supra*, were made after Plaintiff entered into the relevant contracts, and thus Plaintiff could not have relied on those statements in entering into the contracts. The claims for fraud and intentional misrepresentation that are based on these statements are DISMISSED. Because no facts could cure this issue, dismissal is WITHOUT LEAVE TO AMEND. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). The Court does, however, conclude that Plaintiff has stated a claim for fraud and intentional misrepresentation based on the "just secured" statement. *See supra* Part III.B.2.a. The fraud and intentional misrepresentation claims MAY PROCEED on this ground.

**3. Negligent Misrepresentation (Count IV)**

Plaintiff alleges that Defendants "supplied false information . . . that [Capital Asset] had secured ownership of the Centura and Epsilon Systems and was prepared to deliver them on the timelines stated," and that they had no reasonable grounds for believing those statements to be true. SAC ¶¶ 108–09.

In moving to dismiss, Capital Asset argues that California's economic loss doctrine bars Plaintiff's negligent misrepresentation claim. Mot. at 17–18. The economic loss rule bars tort recovery for purely economic loss arising from a breach of contract, unless the claimant can demonstrate violation of an independent duty arising in tort and a harm beyond a broken contractual promise. *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021), *certified question answered*, 17 Cal. 5th 1 (2024) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)). Capital Asset posits that the harm Plaintiff has alleged—the failure to

deliver the equipment within a reasonable amount of time—does not constitute harm beyond a broken contractual promise. Mot. at 18.

In Opposition, Plaintiff insists that the fraudulent inducement exception to the economic loss rule should apply. Opp. at 12–13. Plaintiff points to *Robinson*, in which the California Supreme Court held that the economic loss rule does not bar fraud claims premised on affirmative misrepresentations arising from or related to the performance of a contract. *Robinson*, 34 Cal. 4th at 989.

Capital Asset is correct: the economic loss rule bars this claim. The *Robinson* exception to the economic loss rule only applies where there is an "intentional misrepresentation[] of fact." *Id.* at 991. It does not apply to negligent misrepresentation. *Veasna Chan Hun v. Hajjar*, No. CV 18-10330 PSG (KSX), 2019 WL 8221087, at *5 (C.D. Cal. Sept. 3, 2019) ("[C]ourts have routinely held that the economic loss rule bars negligent misrepresentation claims even 'where the alleged misrepresentations were made in the course of forming the contract.'"). Consequently, the economic loss rule bars this claim. Since no additional facts could cure this legal deficiency, this claim is DISMISSED WITHOUT LEAVE TO AMEND. *Lopez*, 203 F.3d at 1127.

**4. Promissory Fraud (Count VII)**

Plaintiff alleges that when Capital Asset "made express promises to Epicrew that they would sell and deliver [the equipment] in exchange for full advance payment," Capital Asset "did not intend to perform them." SAC ¶¶ 131–32. Plaintiff bases this claim on three allegedly false promises: that Capital Asset had "just secured" the Centura system, that Capital Asset would contact Plaintiff in a few days to begin tool removal, and that the Epsilon system would be shipped from Singapore. SAC ¶¶ 133, 136. Capital Asset argues that this claim should be dismissed because the allegations do not support the conclusion that Capital Asset never intended to perform. Mot. at 19.

To state a claim for promissory fraud, "a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation." *Mat-Van,*

*Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-CV-912 IEGBLM, 2007 WL 2206946, at *6 (S.D. Cal. July 27, 2007). In its most recent Order, the Court found that Plaintiff did not offer any facts to show that Capital Asset did not intend to perform the terms of the Epicrew Contracts. 2026 Order at 19. The SAC has added an additional false promise, the "just secured" statement. SAC ¶ 91. But Plaintiff does not offer any new facts indicating that when Capital Asset made that statement, Capital Asset planned never to secure the equipment—only that Capital Asset did not have the equipment at the moment that statement was made. *See supra* Part III.B.2.a.ii. Since "[m]ere nonperformance of a promise does not suffice to show the falsity of the promise," the Court once again finds that Plaintiff has failed to state a claim. *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015).

The promissory fraud claim is thus DISMISSED. Since Plaintiff has had three chances to produce facts to support this claim and has not done so, dismissal is WITHOUT LEAVE TO AMEND. *Lopez*, 203 F.3d at 1127.

**5. UCL**

The UCL prohibits unfair competition, defined as "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiff raises claims under all three prongs, and Capital Asset moves to dismiss. SAC ¶¶ 142–47; Mot. at 20–23.

**a. Prohibition Against Fraudulent Business Practices**

A business practice is "fraudulent" under the UCL if "members of the public are likely to be deceived." *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (Cal. 1983). The Court previously dismissed the claim under this prong, finding that Plaintiff had not alleged sufficient facts to show a reasonable person would be misled by Capital Asset's statements. 2026 Order at 19. In the SAC, Plaintiff added the "just secured" statement and pleads that Capital Asset has deceived "numerous other buyers." SAC ¶ 143–44; *see also id.* ¶¶ 67–69.

In moving to dismiss, Capital Asset puts forth two arguments. First, Capital Asset contends that Plaintiff has "fail[ed] to identify an actionable misrepresentation." Mot. at 20.

Since the Court has found that the "just secured" statement constitutes an actionable misrepresentation, *supra* Part III.B.2.a., the Court declines to dismiss on this ground.

Second, Capital Asset asserts that Plaintiff may not rely on "numerous other buyers" to state a claim under the UCL, since Plaintiff does not have standing to bring claims on behalf of other buyers. Mot. at 20 (citing *Greenpeace, Inc. v. Walmart Inc.*, No. 21-cv-00754, 2021 WL 4267536, at *1 (N.D. Cal. Sept. 20, 2021)). But this is not a standing issue. Plaintiff is not attempting to bring claims on behalf of the other buyers; rather, Plaintiff is arguing that since Capital Asset's communications misled other buyers, those communications are likely to deceive a reasonable consumer. The Court finds this argument persuasive.

The UCL claim may proceed under the fraudulent prong, based on the "just secured" statement.

**b. Prohibition Against Unlawful Business Practices**

A business practice that violates any law may be redressed under the unlawful acts and practices prong. *See People v. E.W.A.P. Inc.*, 165 Cal. Rptr. 73, 75 (Cal. Ct. App. 1980) (stating that "the purpose of the amendment was to 'extend the meaning of unfair competition to anything that can properly be called a business practice and that at the same time is forbidden by law'") (quoting *Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 112–13 (Cal. 1972)); *see also Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 383 (Cal. 1992). "Virtually any law or regulation—federal or state, statutory or common law—can serve as [a] predicate for a . . . [Section] 17200 'unlawful' violation." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012), *as modified on denial of reh'g* (Feb. 24, 2012).

Defendant contends that Plaintiff's unlawful claim sounds in fraud, yet Plaintiff has failed to meet the Rule 9(b) pleading standard. Mot. at 21. But Plaintiff has stated a claim for fraud and intentional misrepresentation based on the "just secured" statement, *supra* Part III.B.2.a. These are common law claims that can underpin a UCL unlawful practices claim. *Klein*, 202 Cal. App. 4th at 1383. Consequently, this claim may proceed.

**c. Prohibition Against Unfair Business Practices**

A plaintiff may state a claim for an unfair business practice in two ways. She may show that the practice "threatens an incipient violation of an antitrust law or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (Cal. 1999). Or she may base her unfairness claim on public policy. If she chooses this second avenue, "the action must be 'tethered' to specific constitutional, statutory, or regulatory provisions." *Id.*

The Court previously dismissed the claim under this prong, finding that Plaintiff failed to allege facts to show Capital Asset violated antitrust law or policy and did not tether the claim to any constitutional, statutory, or regulatory provisions. 2026 Order at 20. The SAC does not contend that Capital Asset violated antitrust law, so Plaintiff must tether the action to a specific constitutional, statutory, or regulatory provision. *Cel-Tech*, 20 Cal. 4th at 187. To that end, Plaintiff pleads that Capital Asset violated Cal. Pen. Code § 484(a), California's theft statute; Cal. Civ. Code § 1770(a)(9), the Consumer Legal Remedies Act ("CLRA") provision against advertising goods with the intent not to sell as advertised; Cal. Civ. Code § 1770(a)(19), the CLRA provision banning unconscionable terms in contracts; and Cal. Civ. Code § 1689(b)(4), California's contract rescission statute. SAC ¶ 146. But Plaintiff has not pled facts to support any of these provisions. Consequently, the Court finds that Plaintiff has failed to state a claim under the unfair prong of the UCL.

***

In sum, the Court finds Plaintiff has adequately pled violations of the fraudulent and unlawful prongs of the UCL. Those claims may PROCEED. But Plaintiff has failed to state a claim under the unfair prong of the UCL. That claim is DISMISSED, and since Plaintiff has had multiple opportunities to offer additional facts and has not done so, dismissal is WITHOUT LEAVE TO AMEND.

//

United States District Court
Northern District of California

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. ALL CLAIMS against Individual Defendants Jacob, Gill, and Ruiz are DISMISSED.
2. The claims for fraud (Count III) and intentional misrepresentation (Count V) may PROCEED based ONLY on the "just secured" statement.
3. The claim for negligent misrepresentation (Count IV) is DISMISSED.
4. The claim for promissory fraud (Count VII) is DISMISSED.
5. The claim for violation of the fraudulent and unlawful prongs of the UCL (Count VIII) may PROCEED, but the claim for the violation of the unfair prong is DISMISSED.

All dismissals are WITHOUT LEAVE TO AMEND. The claims for breach of contract (Count I) and breach of the implied covenant of good faith and fair dealing (Count II) may proceed.[2]

**IT IS SO ORDERED.**

Dated: August 13, 2026

EDWARD J. DAVILA
United States District Judge

[2] Plaintiff did not replead the claim for fraudulent concealment in the SAC but did not renumber the claims accordingly. Consequently, there is no Count VI.